185 P.3d 1160 (2008)
In the Matter of the DISCIPLINARY PROCEEDING AGAINST George P. TREJO, Jr., an attorney at law.
No. 200,477-6.
Supreme Court of Washington, En Banc.
Argued January 22, 2008.
Decided June 12, 2008.
*1164 Debra Jo Slater, Washington State Bar Association, Seattle, WA, for Respondent.
FAIRHURST, J.
¶ 1 George P. Trejo, Jr., appeals the Washington State Bar Association (WSBA) Disciplinary Board's (Board) recommendation that he be suspended from the practice of law for three months. The WSBA charged Trejo with three counts of misconduct arising out of his trust accounting procedures and lack of oversight of a nonlawyer assistant. Trejo accepts responsibility for each of these counts. The hearing officer and Board concluded that Trejo violated former RPC 1.14(b)(3) (2002),[1] former RPC 1.14(a) (2002),[2] and former RPC 5.3(b) (1985).[3] The hearing officer recommended a six month suspension. The Board, after applying an additional mitigating factor, imposed a three month suspension.
¶ 2 Trejo challenges two of the hearing officer's findings of fact. Trejo also argues that the Board erred in imposing a three month suspension because his actions were negligent rather than knowing. Thus, he argues, the presumptive sanction according to the American Bar Association's Standards for Imposing Lawyer Sanctions (1991 ed. & Supp.1992) (ABA Standards) is a reprimand. In the alternative, Trejo argues that he should be suspended for only 30 days because the hearing officer and Board misapplied the ABA Standards aggravating and *1165 mitigating factors. The WSBA argues that the court should affirm the hearing officer's findings of fact and conclusions of law and increase the suspension to six months because the Board erred in reducing the presumptive sanction when the aggravating factors outweighed the mitigating factors.
¶ 3 We hold that the hearing officer and Board properly determined that Trejo knowingly violated former RPC 1.14(b)(3), former RPC 1.14(a), and former RPC 5.3(b), and we impose a three month suspension followed by two years of probation as recommended by the Board.

I. FACTS
¶ 4 Trejo was admitted to practice law in Washington State in 1990. He has practiced law in Yakima since 1990 and maintained a sole practice since 1995. His practice, during the relevant period of time,[4] was mostly limited to criminal defense. Trejo has one employee, Maria Alvarez.
¶ 5 The current disciplinary proceeding arose out of a notification received by the WSBA in May 2003 that Trejo's trust account was overdrawn. A few days later, Trina Doty, a certified public accountant employed as an auditor by the WSBA, requested an explanation of the overdraft from Trejo. Trejo explained that Alvarez, after being confronted by Trejo, admitted to writing checks to herself from the trust account without Trejo's permission. Alvarez would deposit the check into her personal checking account to cover personal debts and, later, when her personal account was sufficiently funded, she would write a check back to the trust account. This happened approximately 12 times in amounts ranging from $20 to $2,050.
¶ 6 Alvarez's check-floating scheme delayed payments to one of Trejo's clients, Abraham Negrete, who was receiving checks every two weeks from the Department of Labor and Industries (L & I). The L & I check was deposited into Trejo's trust account. Trejo would then issue a check for 90 percent of the L & I check to Negrete and issue a check to either himself or Alvarez for the remaining 10 percent. During the period of January 2002 to May 2003, there were insufficient funds in the client trust account to timely pay Negrete on five separate occasions. The shortages lasted from a few days to a few weeks. Once Alvarez replenished the trust account, a check was written to Negrete. Around May 2003, Alvarez's check to the trust account bounced. This, in turn, caused the check issued to Negrete to bounce and resulted in the overdraft notification.
¶ 7 Alvarez also admitted to misappropriating two payments for her personal use. Alvarez took a check for $860, endorsed it by signing Trejo's name, cashed the check, and then misappropriated the funds. Alvarez was authorized to sign checks using Trejo's name.[5] The other incident involved a wire transfer of $2,000 into the trust account. Alvarez issued herself a check for $2,000, again signing Trejo's name without his permission. Trejo was unaware of any of these activities prior to the May 2003 overdraft notification because he did not review his bank statements.
¶ 8 Trejo's law office maintained inadequate trust accounting procedures and records. Trejo's records for the trust account "consisted solely of a hand written journal that listed the number of the checks written out of the trust account, the date on which the check was issued, the payee, and the amount of the check." Clerk's Papers (CP) at 514-15, ¶ 12. Some of the checks noted which client was associated with the check. Three trust account checks were not accounted for in the journal. The journal did not track deposits or reflect a running balance.
¶ 9 Trejo kept his monthly bank statements, but did not review them. Trejo did not reconcile his journal with the bank statements. Trejo did not maintain individual client ledgers or any records that could be used to accurately determine client balances in the trust account. Thus, Trejo could not identify the funds in the trust account that belonged to each client.
*1166 ¶ 10 Trejo did not maintain a bank account in Washington for his personal or business funds. The hearing officer found that Trejo "told Ms. Doty that he did not maintain a bank account in Washington other than his trust account because he did not want his creditors, including his former wife, to be able to attach his personal assets, i.e. bank account."[6] CP at 515, ¶ 20. When Trejo received a check or wire transfer from a client, the funds were deposited into the trust account regardless of their nature. Earned fees were deposited into the trust account 66 times during the audit period.[7] The earned fees constituted $117,782.74 of the $150,599.66 deposited into the trust account from January 2002 to May 2003. Once the earned fees were deposited, a trust account check was issued to Trejo or Alvarez. Trejo or Alvarez then cashed the check and kept the cash in Trejo's office. Other than the L & I check deposits, client funds were deposited into the client trust account nine times during the audit period. In one instance, Trejo deposited money into the client trust account and then issued a trust account check to pay for a personal debt.
¶ 11 At the conclusion of the audit, Doty explained the proper procedures for handling a trust account and keeping complete records. On March 15, 2004, Doty conducted a follow up audit of Trejo's trust account. Doty concluded that Trejo implemented a number of her recommendations. However, Doty also found that Trejo failed to use client ledgers consistently, failed to identify deposits by client, and failed to reconcile the client ledgers to the check register. Trejo also continued to deposit earned fees into the client trust account. From June 2003 to February 2004, $37,500 in earned fees were deposited into the trust account.
¶ 12 Trejo was previously disciplined twice for the inappropriate handling of client funds. In 2001, Trejo was admonished for violating former RPC 1.14(b) (1991) for "failing to promptly pay client funds held in [his] trust account to [a] client." Ex. A7. In 2003, Trejo was formally reprimanded for failing to provide diligent services in violation of RPC 1.3, charging excessive fees in violation of former RPC 1.5(a) (1990), failing to adequately communicate the basis of a fee in violation of former RPC 1.5(b) (1990), failing to deposit an advance fee into a trust account and then refusing to refund the sum promptly upon termination in violation of former RPC 1.14(a) and (b), and former RPC 1.15(d) (1985), and failing to provide timely responses to the WSBA's investigatory requests.

II. PROCEDURAL HISTORY
¶ 13 The WSBA filed a complaint with the Board charging Trejo with violations of (1) former RPC 1.14(b)(3)[8] "[b]y failing to maintain adequate records of funds in his trust account sufficient to identify all client balances, and failing to reconcile the check register and bank statements;" (2) former RPC 1.14(a) "[b]y commingling earned fees with client funds and having insufficient funds in his trust account;" and (3) former RPC 5.3(a) and/or (b) "[b]y failing to exercise adequate supervision over Ms. Alvarez (a non-lawyer assistant)." CP at 20-21. Trejo stipulated to the charged misconduct.
¶ 14 In determining the appropriate sanction for Trejo's misconduct, the hearing officer applied the ABA Standards. As to count one, the hearing officer determined that Trejo violated former RPC 1.14(b)(3) "[b]y failing to maintain adequate records of funds in his trust account sufficient to identify all client balances, and failing to reconcile the check register and bank statements." CP at 523, ¶ 2. The hearing officer then determined that Trejo's state of mind was knowing because he knew that his books and accounting procedures were inadequate. Trejo was aware of the requirements of former RPC 1.14(b) because "he had been previously disciplined on two separate occasions for violating [former] RPC 1.14(b)." CP at 525. Although the violations were not for the name conduct, Trejo knew that he was required to *1167 keep complete records. Furthermore, he knew that his ethical responsibilities were nondelegable because his previous reprimand involved inadequate accounting by an office assistant.
¶ 15 The hearing officer determined that Trejo's violation of former RPC 1.14(b)(3) resulted in injury to Negrete because his L & I payments were delayed and, on one occasion, a check written to him from Trejo bounced due to insufficient trust account funds. The hearing officer determined that "[n]ot having sufficient funds in the trust account to pay his clients their money constitutes serious injury." CP at 526. The hearing officer also noted that there was the potential for additional serious injury if Alvarez's conduct continued unabated. Applying ABA Standards standard 4.1, the hearing officer concluded that the presumptive sanction for count one was suspension.
¶ 16 As to count two, the hearing officer determined that Trejo violated former RPC 1.14(a) "[b]y commingling earned fees with client funds and having insufficient funds in his trust account." CP at 524, ¶ 3. The hearing officer concluded that Trejo's state of mind was knowing because he knew that all funds, regardless of their character, were deposited in the trust account. Trejo knew that he should not commingle funds because of his 2001 admonition.
¶ 17 The hearing officer determined that Trejo's violation of former RPC 1.14(a) caused serious injury to Negrete because of the delay in payments. The potential injury to Trejo's clients was "extremely serious" because Trejo's "creditors could argue that the character of the trust account had been changed, making the funds in the IOLTA [Interest on Lawyer's Trust Account] account accessible to [Trejo's] creditors." CP at 528. The hearing officer noted that "[t]he prohibition against commingling exists to protect clients by ensuring that their funds are used on their behalf and not on their lawyer's behalf, and to protect client's property from the lawyer's creditors." Id. (citing ANNOTATED MODEL RULES OF PROF'L CONDUCT 237 (3d ed.1996)). Applying ABA Standards standard 4.12, the hearing officer determined that the presumptive sanction was suspension.
¶ 18 As to count three, the hearing officer determined that Trejo violated former RPC 5.3(b) "[b]y failing to exercise adequate supervision over Ms. Alvarez (a non-lawyer assistant)."[9] CP at 524, ¶ 4. The hearing officer noted that Trejo "failed to exercise even a minimal level of supervision over his nonlawyer assistant's handling of client funds and the trust account." CP at 528. This lack of supervision allowed Alvarez's check-floating scheme and misappropriation of funds to continue unabated until the WSBA was notified of an overdraft to the trust account. The hearing officer determined that Trejo's state of mind was knowing because he knew that he was not supervising the trust account. Trejo's "mismanagement by allowing a non-lawyer to sign his name as well as her own on trust account checks, knowing neither she nor he reconciled the account was an open invitation for Ms. Alvarez to manipulate the account to [Trejo's] client's detriment." CP at 530. Trejo knew that his conduct was unethical because mismanagement of funds by a nonlawyer assistant was the catalyst for one of his previous reprimands.
¶ 19 The hearing officer determined that Trejo's violation of former RPC 5.3(b) caused actual serious injury to Negrete. If Alvarez's actions had continued, there was also serious potential injury to other clients. Applying ABA Standards standard 7.2, the hearing officer concluded that the presumptive sanction was suspension.
¶ 20 Finally, the hearing officer considered whether any aggravating or mitigating factors applied. The hearing officer found five aggravating factors: (1) prior disciplinary offenses (2001 admonishment and 2003 reprimand); (2) dishonest or selfish motive (funds were commingled to evade creditors); (3) pattern of misconduct (misconduct continued for 16 months); (4) multiple offenses (violation of three separate RPCs); and (5) substantial *1168 experience in the practice of law (began practicing in 1990).
¶ 21 The hearing officer determined that the mitigating factor of remorse applied but rejected the five other mitigating factors proposed by Trejo. First, the hearing officer rejected the mitigating factor of absence of dishonest or selfish motive because Trejo commingled funds to evade personal creditors. Second, he rejected the mitigating factor of full disclosure to the Board or a cooperative attitude because "[t]he Supreme Court has held that this mitigator does not apply in Washington discipline cases." CP at 531. Third, Trejo's waiver of future fees in the Negrete case did not constitute a timely good faith effort to make restitution or rectify the consequences of misconduct because the waiver was almost two years after the injury occurred. Fourth, the hearing officer determined that the mitigating factor of character and reputation did not apply because, although Trejo performed pro bono public service, such service is a professional responsibility of all lawyers. Fifth, the hearing officer determined that the waiver of future fees in the Negrete case did not constitute a penalty or sanction. Thus, the hearing officer determined that the aggravating factors outweighed the mitigating factors and recommended a six month suspension.
¶ 22 By a vote of eight-to-three, the Board modified the hearing officer's decision by striking three findings of fact and reducing the sanction to three months of suspension followed by two years of probation.[10] The Board determined that the mitigating factor of character and reputation applied because of Trejo's large number of pro bono hours and his efforts to modify his trust account record keeping system based on the WSBA's recommendations. With five aggravating and two mitigating factors, the Board determined that the appropriate sanction was three months followed by two years of probation. Trejo timely sought review of the Board's order.

III. ISSUES
1. Whether the hearing officer's finding that Trejo told Doty that he failed to maintain a personal or business account in Washington to protect his personal assets from creditors is supported by substantial evidence.
2. Whether the hearing officer's finding that Trejo deposited nonrefundable retainers into a client trust account 66 times is supported by substantial evidence.
3. Whether a three month suspension followed by two years of probation is the appropriate sanction for Trejo.

IV. ANALYSIS
¶ 23 This court is ultimately responsible for lawyer discipline in Washington State. In re Disciplinary Proceeding Against Marshall, 160 Wash.2d 317, 329, 157 P.3d 859 (2007). Conclusions of law are reviewed de novo and will not be disturbed if they are supported by the findings of fact. Id. at 330, 157 P.3d 859. Considerable weight is given to a hearing officer's findings of fact and "[u]nchallenged findings of fact are treated as verities on appeal." Id.
¶ 24 Trejo concedes that he violated former RPC 1.14(b)(3), 1.14(a), and 5.3(b), but he disputes the hearing officer's findings of fact 20 and 22. Trejo also argues that the Board erred in determining that the presumptive sanction for each ethical violation was suspension because his conduct was merely negligent under the ABA Standards. In the alternative, Trejo argues that the Board erred in applying the ABA Standards aggravating and mitigating factors.
A. Challenge to finding of fact 20
¶ 25 "An attorney challenging findings of fact must present argument as to why the specific findings are unsupported and cite to the record to support that argument." Marshall, 160 Wash.2d at 331, 157 P.3d 859. We will uphold a hearing officer's findings of fact if they are supported by substantial evidence. *1169 Id. at 330, 157 P.3d 859. "Substantial evidence is evidence sufficient `to persuade a fair-minded, rational person of the truth of a declared premise.'" Id. (internal quotation marks omitted) (quoting In re Disciplinary Proceeding Against Poole, 156 Wash.2d 196, 209 n. 2, 125 P.3d 954 (2006)). If there is conflicting evidence, we normally will not disturb the hearing officer's findings of fact because we "give great weight to the hearing officer's evaluation of the credibility and veracity of witnesses." Id.
¶ 26 In a disciplinary proceeding, the WSBA must prove misconduct by a clear preponderance of the evidence. Id. This standard is more than a preponderance of the evidence but less than beyond a reasonable doubt. Id. Taking into account the clear preponderance standard, "[t]he hearing officer's ultimate conclusion that misconduct occurred should be upheld on review if it is supported by substantial evidence in the record that the lower court could reasonably have found would meet the clear preponderance standard." Id.
¶ 27 Trejo challenges two findings of fact. As to finding of fact 20, Trejo argues that Doty's testimony, by itself, is insufficient to meet the heightened standard of a clear preponderance of the evidence.[11] Trejo admits that the only bank account that he maintained in Washington was the client trust account. However, he disagrees as to the hearing officer's finding that his purpose in maintaining only one account was to avoid creditors. Doty testified that Trejo "indicated that he had had issues with creditors prior. I believe he said it was through a divorce that he'd gone through and his ex-wife was looking to attach, so he didn't want to have any personal accounts in Washington [S]tate." Transcript of Proceedings (TP) at 249. On cross-examination, Doty admitted that she did not know for certain if Trejo was attempting to evade creditors related to a divorce proceeding. Trejo asserts that Doty confused the 2002-03 audit period with his 2001 admonition, which included the finding that Trejo was "concerned that [his] trust account might be garnished to satisfy an outstanding domestic relations judgment against [him]." Ex. A7.
¶ 28 The WSBA argues that finding of fact 20 is supported by substantial evidence and points out that there is no evidence to the contrary. Additionally, the WSBA argues, the hearing officer reasonably could have inferred that Trejo was still concerned about garnishment during the period of January 2002 to May 2003 because he did not open a personal or business banking account after his 2001 admonishment.
¶ 29 Trejo failed to offer any evidence to refute Doty's testimony that he told her that his purpose in maintaining only a trust account in Washington was to evade creditors. The hearing officer determined that Doty's testimony was credible and he reasonably could have inferred, even without Doty's testimony, that Trejo's failure to maintain a personal or business bank account in Washington was for reasons similar to his admitted justification of attempting to evade garnishment in the 2001 admonition. We hold that finding of fact 20 is supported by substantial evidence.
B. Challenge to finding of fact 22
¶ 30 Trejo also challenges finding of fact 22.[12] Trejo argues that this finding was based on a conclusory statement by Doty and was not substantiated by corroborating evidence. Trejo admits that earned fees were deposited in the trust account but contends that this did not occur 66 times. Furthermore, he argues, Doty's testimony was insufficient to establish that the fees in question were fully earned. The Board appears to have agreed, at least in part, with Trejo, but did not strike finding of fact 22.[13]
*1170 ¶ 31 Trejo's argument focuses on a hypothetical scenario involving payment of a nonrefundable retainer by a third party on behalf of a potential client before a client consents to representation.[14] Trejo posed this hypothetical to Doty on cross-examination, and she responded by asking whether he would consider the retainer to be an earned fee. After he opined that the funds were not earned, she recommended that Trejo wait until he obtained client consent before accepting payment by a third party.
¶ 32 The WSBA asserts that Trejo's argument is contrary to his earlier admissions. Trejo admitted that when he "received a check from a client he deposited the check into his trust account regardless of whether the funds were client funds, fully earned fees or non-refundable retainers." CP at 238, ¶ 37. After depositing a nonrefundable retainer, a trust account check representing the earned fees was then issued to Trejo or Alvarez. Trejo told Doty that all funds received by wire transfer were earned fees. Based upon Trejo's characterization of the retainers as earned fees and an independent analysis of the retainer agreements involved, Doty concluded that throughout the first audit period earned fees in the amount of $117,782.74 were deposited into the client trust account by check or wire transfer. In total, Doty testified, earned fees were deposited into the trust account 66 times.
¶ 33 While the issue of whether a client must consent to representation before a nonrefundable retainer may be considered an earned fee is interesting, there is no factual support for making such a determination in this case. A hypothetical posed to a witness during cross-examination is not evidence, and Trejo never presented any evidence that this hypothetical situation represented any of the payments he received during the audit period. Thus, we decline to address this hypothetical scenario and hold that finding of fact 22 is supported by substantial evidence.
C. Appropriate sanction
¶ 34 In determining the appropriate sanction for professional misconduct, we use the ABA Standards as a basic guide. In re Disciplinary Proceeding Against Schwimmer, 153 Wash.2d 752, 758, 108 P.3d 761 (2005). Under the ABA Standards, "we first evaluate whether the Board properly determined the presumptive sanction by considering (1) the ethical duties violated, (2) the lawyer's mental state, and (3) the actual or potential injury caused by the lawyer's conduct." Marshall, 160 Wash.2d at 342, 157 P.3d 859. Next, we consider whether any aggravating or mitigating circumstances exist. Id. Finally, we consider the appropriateness of the sanction using the factors set forth in In re Disciplinary Proceeding Against Noble, 100 Wash.2d 88, 95-96, 667 P.2d 608 (1983), but only if such issues are raised by the attorney who is being disciplined. Schwimmer, 153 Wash.2d at 758, 108 P.3d 761.
¶ 35 If the sanction recommended by the Board differs from the recommendation of the hearing officer, we generally give more weight to the Board's recommendation. Marshall, 160 Wash.2d at 343, 157 P.3d 859. However, the recommendation of a divided Board is entitled to less weight. Id. Normally, we will adopt the Board's recommended sanction "unless we are able to articulate specific reasons for adopting a different sanction." Noble, 100 Wash.2d at 95, 667 P.2d 608.
¶ 36 Trejo admits that he violated former RPC 1.14(b)(3), 1.14(a), and 5.3(b). Thus, the next question is whether the Board was correct in its determination that Trejo knowingly violated each of these rules. The ABA Standards defines "`[k]nowledge'" as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result," while "`[n]egligence'" is defined as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." ABA STANDARDS at 7. *1171 We give great weight to a hearing officer's determination of an attorney's state of mind because it is a factual finding. In re Disciplinary Proceeding Against Longacre, 155 Wash.2d 723, 744, 122 P.3d 710 (2005).
¶ 37 After we determine the appropriate state of mind, we must consider the extent of the actual or potential injury caused by the lawyer's conduct. "`Injury'" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct." ABA STANDARDS at 7. A "`[p]otential injury'" is defined as "the harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct." Id.
¶ 38 Where there are multiple instances of misconduct, the presumptive sanction must be at least as severe as the sanction for the most serious offense. Marshall, 160 Wash.2d at 346, 157 P.3d 859. "Suspensions should generally fall within the range of six months to three years." In re Disciplinary Proceeding Against Lopez, 153 Wash.2d 570, 596 n. 11, 106 P.3d 221 (2005) (citing ABA STANDARDS std. 2.3). "`The minimum suspension is appropriate in cases where there are both no aggravating factors and at least some mitigating factors, or when the mitigating factors clearly outweigh the aggravating factors.'" Id. (quoting In re Disciplinary Proceeding Against Cohen, 149 Wash.2d 323, 339, 67 P.3d 1086 (2003)).
1. Presumptive sanction for violation of former RPC 1.14(b)(3)
¶ 39 The presumptive sanction for a violation of former RPC 1.14(b)(3) is ABA Standards standard 4.1.[15] Trejo argues that he was negligent in dealing with client property.[16] Trejo asserts that his misconduct was not knowing because, unlike a medium or large law firm, his sole practitioner firm was based upon "significant trust" in Alvarez and there is no evidence to indicate that his trust was misplaced. Appellant's Am. Opening Br. at 28-29. Trejo asserts that "it is beyond belief to claim the Appellant was knowingly complicit in his employee's misconduct  he was however, negligent." Id. at 30.
¶ 40 The WSBA argues that the Board properly applied the presumptive sanction of suspension pursuant to ABA Standards standard 4.12. Trejo knew that he was required to keep complete records regarding his trust account because he was previously reprimanded for violating former RPC 1.14(b) (1991). Trejo "knew he was not maintaining complete records and that he did not keep a running balance of the funds in his trust account, did not keep client ledgers, and did not reconcile his bank statement." Answering Br. of WSBA at 15. Furthermore, the WSBA argues, the hearing officer correctly determined that Trejo knew that he could not delegate his trust accounting responsibilities. Trejo's actions caused actual injury to a client because, due to insufficient funds in the trust account, payments to a client were delayed and, in one instance, resulted in a bounced check.
¶ 41 The hearing officer's determination that Trejo knowingly violated former RPC 1.14(b)(3) is supported by the findings of fact. Trejo knew he was required to keep complete trust accounting records and could not abdicate all responsibility for maintaining such records by delegating the task to a nonlawyer assistant. Because Trejo failed to supervise Alvarez's bookkeeping, review the *1172 bank statements, or review the check ledger, he was unaware of Alvarez's embezzlement from the client trust account throughout the entire audit period. Alvarez's embezzlement resulted in insufficient funds in the trust account and untimely payments to a client. The delay in payments constitutes an injury to a client. The presumptive sanction for Trejo's violation of former RPC 1.14(b)(3) is suspension because Trejo knew or should have known that he was not complying with former RPC 1.14(b)(3) and his conduct caused injury to a client.
2. Presumptive sanction for violation of former RPC 1.14(a)
¶ 42 The presumptive sanction for a violation of former RPC 1.14(a) is also ABA Standards standard 4.1. An attorney's reason for commingling funds indicates his or her mental state. In re Disciplinary Proceeding Against Tasker, 141 Wash.2d 557, 569, 9 P.3d 822 (2000). Trejo argues that he merely acted negligently in commingling client and personal funds in violation of former RPC 1.14(a) and that his conduct caused no actual or potential injury. Trejo asserts that a "[g]ood faith dispute" exists over whether nonrefundable retainers should be deposited in a trust account or a general account and, thus, his placement of allegedly "earned fees" in a client trust account was negligent at worst. Appellant's Am. Opening Br. at 30-31. Furthermore, he argues, the commingling caused no actual or potential injury to a client. Only one client's funds were regularly deposited into the trust account, and the only injury to this client was a delay in payment.
¶ 43 The WSBA argues that Trejo's state of mind was knowing because he knew that all wire transfers and checks were deposited into his trust account, regardless of whether they were earned or client funds. Also, Trejo's 2001 admonition indicates that he was aware that he should not commingle client and personal funds. As to injury, the WSBA argues that Negrete was actually injured because his payments were delayed and one check bounced. Additionally, there was a serious potential injury to all of Trejo's clients because Trejo's "creditors could argue that the character of the trust account had been changed, making the funds in the IOLTA account accessible to [Trejo's] creditors." CP at 528.
¶ 44 As the hearing officer concluded, Trejo knew that all wire transfers and checks, at least some of which he admits were earned fees, were deposited into a client trust account. Trejo presents no evidence to contradict the hearing officer's determination that he knowingly commingled funds, so it is appropriate to defer to the hearing officer's and Board's determinations that Trejo knowingly violated former RPC 1.14(a).
¶ 45 As to the injury consideration, even if the commingling itself did not cause injury to a client, there is a potential for serious injury to Trejo's clients. Although the commingling may have been the result of poor bookkeeping and deposit practices, rather than an intent to convert client funds, Trejo is still responsible for his actions. "[Former] RPC 1.14 implicitly includes the duty not to use a lawyer's trust account as a personal bank." In re Disciplinary Proceeding Against McKean, 148 Wash.2d 849, 865, 64 P.3d 1226 (2003). "`Lawyers sometimes forget that the dangers of commingling are not merely that the lawyer will squander the money "borrowed" from a trust account and not be able to restore it, but that the commingled funds might be subject to attachment by a lawyer's creditors, thus preempting the lawyer's ability to do so.'" Id. at 864, 64 P.3d 1226 (quoting GEOFFREY C. HAZARD, JR. & W. WILLIAM HODES, THE LAW OF LAWYERING: HANDBOOK ON THE MODEL RULES OF PROFESSIONAL CONDUCT § 19.4 (3d ed. 2001 & Supp.2002)). Additionally, the prohibition against commingling "prevents lawyers from shielding personal assets from their own creditors by hiding funds in client trust accounts." ANNOTATED MODEL RULES OF PROF'L CONDUCT 249-50 (5th ed.2003). Thus, there is ample evidence that continued commingling of client and personal funds in the trust account could result in a personal creditor satisfying a judgment against Trejo from the client trust account. The presumptive sanction for Trejo's violation of former RPC 1.14(a) is suspension.
*1173 3. Presumptive sanction for violation of former RPC 5.3(b)
¶ 46 The presumptive sanction for a violation of former RPC 5.3(b) is determined by ABA Standards standard 7.0.[17],[18] ABA STANDARDS at 58. The hearing officer applied standard 7.2 to Trejo's violation of former RPC 5.3(b), concluding that he knowingly abdicated all responsibility for trust accounting to a nonlawyer assistant and that his misconduct caused actual injury to one client and potential serious injury to all of Trejo's clients.[19]
¶ 47 Trejo asserts that his mental state in violating former RPC 5.3(b) was negligence. He acknowledges that he was negligent in supervising Alvarez but asserts that "[h]e did not `knowingly' allow her to abuse his trust or misuse the trust account." Appellant's Am. Opening Br. at 33. The WSBA argues that the hearing officer's finding that Trejo knowingly violated former RPC 5.3(b) is supported by substantial evidence. The hearing officer found that Trejo "knew that he was not overseeing Ms. Alvarez's handling of client funds in his IOLTA Trust Account." CP at 529. Trejo testified that Alvarez was authorized to sign his name on checks from the trust account. He also admitted that he never reviewed bank statements during the audit period. Trejo knew that the ethical duties regarding trust accounting could not be delegated to a nonlawyer assistant because of his 2003 reprimand.
¶ 48 We hold that the presumptive sanction for Trejo's violation of former RPC 5.3(b) is suspension because, although he did not know about or participate in Alvarez's check floating and misappropriation, he knew that he had completely abdicated all responsibility for complying with the ethical requirements of trust accounting to a nonlawyer assistant.
4. Aggravating factors
¶ 49 Once we determine the presumptive sanction, we consider any aggravating or mitigating factors.[20]Marshall, 160 *1174 Wash.2d at 342, 157 P.3d 859. The hearing officer found five aggravating factors: (1) prior disciplinary offenses (2001 admonishment and 2003 reprimand); (2) dishonest or selfish motive (funds were commingled to protect Trejo's assets); (3) pattern of misconduct (misconduct continued for 16 months); (4) multiple offenses (violation of three separate RPCs); and (5) substantial experience in the practice of law (began practicing in 1990). These aggravating factors were affirmed by the Board. Trejo contests only the aggravating factor of dishonest or selfish motive.
¶ 50 Trejo asserts that his conduct was not motivated by dishonest or selfish motives. He argues that his full disclosure and cooperation during the audit period are indicative of the absence of a dishonest motive. He also argues that he did not act dishonestly because he was not trying to evade his creditors. The WSBA argues that the hearing officer and Board were correct in finding that Trejo commingled funds in order to protect his personal assets and, consequently, acted with a dishonest or selfish motive.
¶ 51 This court has applied the aggravating factor of dishonest or selfish motives in cases where the "lawyer intends to benefit financially or deceive the court." In re Disciplinary Proceeding Against Holcomb, 162 Wash.2d 563, 587, 173 P.3d 898 (2007). For example, an attorney who solicits loans from a client because he is unable to find funding elsewhere acts selfishly because the attorney seeks to benefit directly from the client. Id. In this case, the hearing officer found that Trejo told Doty that the reason he did not have a personal or business account in Washington was because he was trying to evade creditors. Trejo is not required to maintain a business account in Washington and there is no evidence that he intended to benefit financially from not having a business account in Washington. There is no evidence of any attempts to evade creditors, but merely Trejo's statement to Doty. We hold that the finding that Trejo told Doty he was trying to evade creditors does not support a finding that the aggravating factor of dishonest or selfish motive applies.
5. Mitigating factors
¶ 52 The hearing officer applied only the mitigating factor of remorse. The Board determined that the mitigating factor of character and reputation also applied. Trejo argues that the Board erred by failing to apply the mitigating factors of (1) absence of dishonest or selfish motive, (2) personal or emotional problems, (3) timely good faith effort to make restitution or to rectify the consequences of misconduct, (4) full and free disclosure to the Board or cooperative attitude toward proceedings, and (5) imposition of other penalties or sanctions.
a. Absence of dishonest or selfish motive
¶ 53 Trejo argues that the Board erred in determining that the mitigating factor of an absence of dishonest or selfish motive did not apply. Trejo argues that his cooperation in the auditing process indicates that he lacked a dishonest motive. Additionally, he argues, he was not trying to hide assets from his ex-wife. The WSBA argues that Trejo's argument is contrary to the hearing officer's finding that he maintained only a client trust account in Washington to evade creditors.
¶ 54 Trejo bears the burden of proof as to whether there was an absence of dishonest or selfish motive. In re Disciplinary Proceeding Against Carpenter, 160 Wash.2d 16, 30, 155 P.3d 937 (2007). Trejo does not offer substantial evidence to support his proposition that he lacked a dishonest or *1175 selfish motive; instead, he simply reiterates his argument that the aggravating factor of a dishonest or selfish motive is not supported by substantial evidence. Trejo's argument is insufficient to meet his burden of proof on this mitigating factor.
b. Personal or emotional problems
¶ 55 Trejo argues that if this court determines that he acted with a dishonest or selfish motive, then the court should apply the mitigating factor of personal problems because of his financial difficulties. Trejo argues that this court reduced a presumptive sanction due to an attorney's financial problems in In re Disciplinary Proceedings Against Burtch, 112 Wash.2d 19, 770 P.2d 174 (1989). In that case, this court reduced the Board's imposition of a 90 day suspension to a period of probationary supervision because of an attorney's "personal and emotional problems which may have led to a degree of mental impairment." Id. at 28, 770 P.2d 174. A judgment of $100,000 was entered against an attorney, resulting in the garnishment of bank accounts, execution against books and equipment, and loss of his home and office building. Id. This led to bankruptcy, marital problems, and depression. Id. The WSBA argues that the instant case is distinguishable from Burtch because no evidence was presented that Trejo experienced any personal or emotional problems during the audit period.
¶ 56 Generally, personal financial problems are not a mitigating factor and an attorney must establish some connection between the personal problem and the unethical conduct. Holcomb, 162 Wash.2d at 591, 173 P.3d 898. We hold that the mitigating factor of personal or emotional problems does not apply because Trejo fails to offer any evidence to support his assertion that he was undergoing personal or emotional problems during the audit period.
c. Timely good faith effort to make restitution
¶ 57 Trejo argues that the Board erred in failing to apply the mitigating factor of timely good faith effort to make restitution or to rectify the consequences of his misconduct. "Restitution which is made upon the lawyer's own initiative should be considered as mitigating; lawyers who make restitution prior to the initiation of disciplinary proceedings present the best case for mitigation, while lawyers who make restitution later in the proceedings present a weaker case." ABA Standards std. 9.3 cmt. at 50. Trejo argues that this mitigating factor applies because he voluntarily waived thousands of dollars in attorney fees for the client whose payments were delayed due to his unethical trust accounting practices.
¶ 58 The hearing officer rejected Trejo's argument because the waiver was untimely. The delays in payment occurred in 2002 and 2003, and the check to the client bounced around April 29, 2003. Trejo continued to collect fees from the client at least until January 26, 2005, more than two years after the injury began. Additionally, Trejo waived the fee after the WSBA conducted two audits and commenced this disciplinary proceeding.
¶ 59 While Trejo's waiver of fees may have been in good faith, it is unclear whether the waiver actually constitutes restitution. The letter sent by Trejo to his client did not include an apology and did not mention the delay in payments.[21] We hold that the mitigating factor of a timely good faith effort to make restitution does not apply because any restitution on Trejo's part was untimely, followed the commencement of disciplinary proceedings, and failed to include any explanation to the client as to why the fees were being waived.
d. Full and free disclosure to Board or cooperative attitude toward proceedings
¶ 60 Trejo argues that this court should overrule its prior case law holding that the mitigating factor proposed by ABA Standards standard 9.32(e) does not apply in Washington. Appellant's Am. Opening Br. at 48 (citing In re Disciplinary Proceeding Against Dynan, 152 Wash.2d 601, 98 P.3d 444 (2004); In re Disciplinary Proceeding Against Whitt, 149 Wash.2d 707, 721, 72 P.3d *1176 173 (2003)). Trejo is mistaken. We recently held that "[c]ooperation with the disciplinary proceedings as a mitigating factor may be appropriate in some cases." In re Disciplinary Proceeding Against Dornay, 160 Wash.2d 671, 686, 161 P.3d 333 (2007).
¶ 61 In Dornay we deferred to the Board's determination that an attorney fully cooperated with the disciplinary proceedings. Id. In this case, the hearing officer refused to consider this mitigating factor, believing it to be nonapplicable in Washington. The Board did not address this issue. Thus, unlike the situation in Dornay, there is no finding of full cooperation by the hearing officer or Board.
¶ 62 The mitigating factor of full and free disclosure to a disciplinary board or a cooperative attitude toward proceedings applies in situations where an attorney goes above and beyond the compliance required in a disciplinary investigation or proceeding. An attorney must cooperate with a bar investigation and proceeding. See, e.g., ELC 5.3(e), 5.5(c), 10.11(g), 10.13(b), (c), 15.2. With regard to trust accounts, a lawyer who is subjected to an examination, investigation, or audit by the WSBA "must cooperate with the person conducting the examination" by, among other things, "producing forthwith all evidence, books, records, and papers requested for the examination, investigation, or audit" and "furnishing forthwith any explanations required for the examination, investigation, or audit." ELC 15.2. For the mitigating factor of disclosure or cooperation to apply, the disciplined attorney must show that his or her disclosure or cooperation surpassed what is required from all attorneys.
¶ 63 In this case, Trejo argues that his "extraordinary cooperation subjected him to additional charges." Appellant's Am. Opening Br. at 41. He provides no support for this assertion. At the hearing, the auditor testified that Trejo was cooperative and produced all of the materials that she requested. When the WSBA requested an explanation for the overdraft, Trejo explained the check-floating situation and disclosed Alvarez's misappropriation of two checks. The WSBA was unaware of Alvarez's misappropriation before Trejo's disclosure. Trejo went beyond the requirements of ELC 5.3(e) and 15.2(b) by volunteering information of possible misconduct that was outside of the scope of the explanation requested by the WSBA. While there is no evidence that this additional information was the basis of any additional charges, we hold that the mitigating factor of free and full disclosure to the Board applies.
e. Imposition of other penalties or sanctions
¶ 64 Trejo argues that his voluntary waiver of his attorney fees for Negrete constitutes a self-imposed penalty that should mitigate the presumptive sanction. Trejo admits that no case law supports his assertion that a self-imposed penalty may be considered a mitigating factor. The WSBA argues that this court should defer to the hearing officer's determination that this mitigating factor does not apply. Trejo's restitution efforts do not constitute a penalty and are more appropriately considered under the mitigating factor of a timely good faith effort to make restitution.
6. Proportionality and unanimity
¶ 65 After determining the presumptive sanction and accounting for all relevant aggravating and mitigating factors, we consider whether the sanction is appropriate based upon the Noble factors, but only if the issue is raised by the attorney who is being disciplined. Schwimmer, 153 Wash.2d at 758, 108 P.3d 761. Under our current jurisprudence, the two Noble factors that should be considered are "(1) proportionality of the sanction to the misconduct and (2) the extent of agreement among the members of the Disciplinary Board." Id. at 764, 108 P.3d 761. Trejo did not explicitly challenge the proportionality of the Board's recommended sanction in his briefing. At oral argument, Trejo asserted that the recommended sanction was disproportionate to a 2002 case involving an attorney who was censured for failing to maintain adequate trust account records, failing to preserve client funds, and commingling client and personal funds. See In re Discipline of Jones, WSBA Public No. 02# 00046, Stipulation to Censure and Probation (Mar. 25, 2002). However, the case referred to by Trejo is distinguishable because in that case the lawyer's mental state was merely negligent, for which the presumptive *1177 sanction is a reprimand, whereas Trejo was found to have knowingly violated the provisions in question which carries a presumptive sanction of suspension. See id. at 4.
¶ 66 As noted above, the recommendation of a divided Board is entitled to less weight. Marshall, 160 Wash.2d at 343, 157 P.3d 859. However, we will adopt the Board's recommended sanction "unless we are able to articulate specific reasons for adopting a different sanction." Noble, 100 Wash.2d at 95, 667 P.2d 608. The Board's recommendation of a three month suspension was not unanimous in this case, but because the dissenting members recommended longer suspensions, the Board's recommendation is entitled to deference. See Holcomb, 162 Wash.2d at 595, 173 P.3d 898. Although we find four aggravating factors and three mitigating factors, we have no specific reason to adopt a different sanction and, consequently, adopt the Board's recommendation.

V. CONCLUSION
¶ 67 We hold that the hearing officer and Board properly determined that Trejo knowingly violated former RPC 1.14(b)(3), 1.14(a), and 5.3(b). For these violations, we impose a three month suspension followed by two years of probation as recommended by the Board.
WE CONCUR: GERRY L. ALEXANDER, C.J., SUSAN OWENS, and CHARLES W. JOHNSON, BARBARA A. MADSEN, DEBRA L. STEPHENS and TOM CHAMBERS, JJ.
SANDERS, J. (dissenting).
¶ 68 George Trejo allowed a trusted employee to access his client trust account. This employee repaid Trejo's trust by embezzling from him. Because of this theft, his client trust account ran a deficit and incurred an audit by the Washington State Bar Association. But today the majority blames the victim of the theft and redoubles Trejo's loss. His suspension is the result of his lack of distrust resulting in minor accounting errors. However, Trejo should not be punished so severely for his naiveté that led to his victimization as "[t]hey that know no evil will suspect none."[1] Since Trejo is the only victim of this theft, I must dissent.
¶ 69 When an attorney violates professional duties, the court determines the appropriate sanction using a two step process. In re Disciplinary Proceeding Against Anschell, 149 Wash.2d 484, 501, 69 P.3d 844 (2003). "`First, we determine a presumptive sanction by considering (1) the ethical duty violated, (2) the lawyer's mental state and (3) the extent of the actual or potential harm caused by the misconduct. Then, we consider any aggravating or mitigating factors which may alter the presumptive sanction.'" In re Disciplinary Proceeding Against Dann, 136 Wash.2d 67, 77, 960 P.2d 416 (1998) (quoting In re Disciplinary Proceedings Against Johnson, 118 Wash.2d 693, 701, 826 P.2d 186 (1992)).
¶ 70 Trejo admits he violated former Rules of Professional Conduct (RPC) 1.14(a) (2002), 1.14(b)(3) (2002), and 5.3(b) (1985).[2] The main dispute revolves around the sanction Trejo must bear for these three violations. I believe the disciplinary board erred in determining Trejo's mental state and the level of injury his violations caused. These errors resulted in the board's imposing the wrong sanction. There is no evidence Trejo's violations were done knowingly. More importantly, his violations caused "`little or no' injury"[3] to his clients.[4] Therefore Trejo's presumptive sanction is properly admonition. In addition the majority fails to recognize Trejo's restitution further mitigates his violations.
*1178 I. Presumptive sanction for violations
¶ 71 To determine the presumptive sanction for a violation, the court must determine the attorney's mental state leading to the violation and level of injury caused by the violation. ABA, Standards for Imposing Lawyer Sanctions std. 3.0 (1991 & Supp. 1992) (Standards). Under the Standards a lawyer acts knowingly when he is consciously aware "of the nature or attendant circumstances of the conduct" and undertakes the conduct notwithstanding its unethical nature. Standards Definitions at 17. By contrast a lawyer acts negligently when he fails "to heed a substantial risk that circumstances exist or that a result will follow." Id.
¶ 72 An ethics violation causes injury when it harms "a client, the public, the legal system, or the profession. . . . The level of injury can range from `serious' injury to `little or no' injury." Id.
Former RPC 1.14(b)(3) violation and presumptive sanction
¶ 73 Trejo admitted he violated former RPC 1.14(b)(3) by failing to keep the required records on his Interest on Lawyer's Trust Account (IOLTA). But the majority improperly asserts Trejo knowingly violated former RPC 1.14(b)(3), apparently because he knew what records were required and he did not maintain them. Majority at 1171. It also holds this violation injured Trejo's clients. Id. at 1171.
¶ 74 The majority's analysis errs because there is no evidence suggesting Trejo knew his trust accounting records were insufficient. The majority relies on Trejo's previous reprimand, for failing to keep records. Id. at 1171. However, following the reprimand Trejo changed his procedures and began keeping some trust accounting records, including a "hand written journal." Finding of Fact 12. Although these accounting records were insufficient, there is no evidence Trejo knew this record keeping violated his professional duties. Because he was not aware his procedures were insufficient, he was merely negligent when he violated former RPC 1.14(b)(3).
¶ 75 More importantly, Trejo's lack of trust account records caused "`little or no'"[5] harm to his clients. Trejo had only one client receiving funds from the trust account, and this client received every penny. There is no evidence the client suffered any deprivation based on the short delay in transmitting these funds.
¶ 76 The majority claims "[t]he delay in payments constitutes an injury to a client." Majority at 1171. Although the majority makes this statement unabashedly, it fails to identify any actual harm this short delay caused the client. The only possible harm suffered is the client's loss of interest on the funds, likely measured in pennies. This loss of pennies in interest must be the "harm" the majority seeks to punish.
¶ 77 That the majority would find the client's loss of interest sufficient to deprive Trejo of his ability to practice law is curious. This court routinely confiscates interest earned by a client from funds held in an IOLTA account, and yet today we punish an attorney for doing that very thing (although much less so).[6] Unlike the "harm" at issue here, in the aggregate the court's total take is nearly $9 million a year.[7] I find it not only unconscionable but hypocritical for the majority to punish Trejo for depriving a client of pennies in interest, when we deliberately, willfully, and intentionally confiscate millions *1179 of dollars in client funds from thousands of clients annually.
¶ 78 Since Trejo violated former RPC 1.14(b)(3) negligently, and caused at most de minimis harm to his clients, the presumptive sanction for this violation is admonishment.[8]
Former RPC 1.14(a) violation and presumptive sanction
¶ 79 Trejo violated former RPC 1.14(a) when he deposited earned funds into his IOLTA account thereby commingling personal and client funds. Although Trejo admitted to commingling client funds with his own,[9] there is no evidence he did so knowingly. Nor was any client actually or potentially injured by this commingling.
¶ 80 Trejo did not knowingly commingle client funds with earned fees. As the Board recognized, whether nonrefundable retainers are earned fees or if the fee is unearned until the client consents to representation is unsettled. Assuming arguendo Trejo knew "he should not commingle client and personal funds,"[10] nothing proves Trejo knew he was improperly commingling the funds he reasonably believed were unearned.
¶ 81 The majority claims Trejo's inadvertent commingling of funds in his IOLTA account was potentially injurious because it "could result in a personal creditor satisfying a judgment against Trejo from the client trust account." Majority at 1172. A "[p]otential injury" is harm that would have resulted from the violation "but for some intervening factor or event." Standards Definitions at 17.
¶ 82 However, the majority's identification of this potential injury fails to meet this standard as the identified injury is nothing more than a hypothetical, inchoate risk which was never in danger of coming to fruition. There is no evidence that Trejo had any outstanding debts nor is there any evidence Trejo had creditors seeking to satisfy a judgment from his assets. There was no "intervening factor or event" that prevented a creditor from attempting to attach the IOLTA account. Thus the potential injury identified by the majority is simply an unsupported hypothetical risk and not an actual "potential injury" justifying suspension.
¶ 83 Since Trejo's commingling of funds was done negligently, and there was little or no injury caused by the violation, the presumptive sanction for this violation is also admonishment.[11]
Former RPC 5.3(b) violation and presumptive sanction
¶ 84 Lastly, Trejo violated former RPC 5.3(b) by failing to adequately supervise Alvarez who embezzled funds from Trejo through his IOLTA account. There is no evidence Trejo knowingly failed to adequately supervise Alvarez, nor is there evidence that his clients were harmed by the lack of supervision. In fact, logic would dictate Trejo did not know his employee was stealing from him because he suffered the greatest harm, direct theft by an employee.
¶ 85 Trejo was negligent in supervising Alvarez. The crux of the majority's assertion is that Trejo knew, and consciously disregarded, he had a duty to implement controls over Alvarez's access to the trust account. However, the evidence does not support this assertion. The evidence supports only the inference that Trejo knew his "ethical duties regarding trust accounting could not be delegated to a nonlawyer assistant." Majority at 1172. But this does not mean an attorney cannot put a third party in charge of his trust account. As Trejo points out, most law firms delegate responsibility for trust fund accounting to a separate accounting department. It is not Trejo's delegation of responsibility in this case that was improper, but his dishonest employee. Trejo cannot be punished *1180 again for trusting his employee who turned Trejo into a victim by stealing from him.
¶ 86 Again, Trejo's clients received all funds due; there was no harm. The majority fails to address the harm this violation caused, but again the only possible harm is measured in pennies.
¶ 87 Because Trejo's violation of former RPC 5.3(b) was negligent and caused little or no harm, the presumptive sanction is, again, admonition.[12]
II. Mitigating Factors
¶ 88 In addition to the mitigators found applicable by the majority, the restitution mitigator should also apply. Trejo voluntarily provided his client with thousands of dollars in free legal services in an effort to mitigate the short delay the client experienced in receiving his funds. This is more than mitigation; it is a generous good faith effort not merely to restore the loss but to restore client confidence in his integrity.
¶ 89 The majority refuses to give effect to this mitigator in part because the letter waiving his fees "did not include an apology and did not mention the delay in payments." Id. It is unclear how the lack of apology counsels against this mitigating factor, as restitution was more than made. In addition, the majority finds it important that the wavier of fees was made after the commencement of disciplinary proceedings. Majority at 33. However, "[r]estitution which is made upon the lawyer's own initiative should be considered as mitigating." Standards std. 9.32 cmt. Since Trejo provided the valuable legal services without being required, this is mitigating and should be considered.
¶ 90 Trejo negligently violated his ethical duties; however his actions did not harm his clients, unlike the harm[13] this court causes thousands of clients annually. We might be justified in suspending Trejo's accounting license, but admonition is the appropriate sanction for violating his ethical duties as a lawyer. I refuse to join the majority's suspension of Trejo's license when his biggest flaw was misplaced trust in an employee who subsequently stole his money.
¶ 91 I dissent.
WE CONCUR: JAMES M. JOHNSON, J.
NOTES
[1] Former RPC 1.14(b)(3) states that a lawyer shall "[m]aintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his or her client regarding them."
[2] Former RPC 1.14(a) states:

All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable interest-bearing trust accounts maintained as set forth in section (c), and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein;
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
[3] Former RPC 5.3(b) states that "[w]ith respect to a nonlawyer employed or retained by or associated with a lawyer: . . . [a] lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer."
[4] The audit of Trejo's trust account records that forms the basis of this disciplinary action covered the period of January 2002 to May 2003.
[5] RPC 1.15A(h)(9), which provides that only a lawyer may be an authorized signatory on a trust account, was not in effect at the time in question.
[6] Trejo contends that there is insufficient evidence to support this finding.
[7] Trejo contends that there is insufficient evidence to support this finding.
[8] Former RPC 1.14 was amended on October 1, 2002. While the events in question occurred during the period of January 2002 to May 2003, the 2002 amendment was technical in nature and did not affect any of the provisions under which Trejo was charged.
[9] The hearing officer's conclusion states that Trejo violated "[former] RPC 5.3(a) and/or (b)." CP at 524. Later, the hearing officer limited his conclusion to former RPC 5.3(b). The WSBA conceded during closing arguments that former RPC 5.3(a) did not apply.
[10] Two board members voted for a six month suspension, while one voted for a two year suspension.
[11] "Respondent told Ms. Doty that he did not maintain a bank account in Washington other than his trust account because he did not want his creditors, including his former wife, to be able to attach his personal assets, i.e. bank account." CP at 515, ¶ 20.
[12] "Between January 2002 and May 2003, there were sixty-six (66) instances where the funds deposited into Respondent's trust account were non-refundable retainers that Respondent considered fully earned fees." CP at 516, ¶ 22.
[13] The Board was concerned about how Doty determined that the fees at issue were earned, especially in cases where a third party paid the nonrefundable retainer.
[14] No evidence was presented that such a scenario actually occurred during the audit period. Trejo framed the situation as a "hypothetical" and, although he noted that it "happens frequently in criminal cases," he presented no evidence that any of the checks or wire transfers in question fell within the hypothetical scenario. TP at 311.
[15] Pursuant to ABA Standards standard 4. 1, if an attorney fails to preserve client property, the following sanctions are appropriate:

4.11 Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.
4.12 Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.
4.13 Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.
4.14 Admonition is generally appropriate when a lawyer is negligent in dealing with client property and causes little or no actual or potential injury to a client.
[16] Trejo does not specifically challenge the finding that his violation of former RPC 1.14(b)(3) caused actual or potential injury to a client. See Appellant's Am. Opening Br. at 27-30.
[17] ABA Standards standard 7.0 states that the following sanctions are appropriate for violations of other duties owed as a professional:

7.1 Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and caused serious or potentially serious injury to a client, the public, or the legal system.
7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.
7.3 Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.
7.4 Admonition is generally appropriate when a lawyer engages in an isolated instance of negligence that is a violation of a duty owed as a professional, and causes little or no actual injury or potential injury to a client, the public, or the legal system.
[18] Trejo argues that ABA Standards standard 5.1 is more appropriate because the basis of this charge is the dishonest and deceitful behavior of Alvarez. This assertion is incorrect. The WSBA charged Trejo with failing to supervise Alvarez and did not allege that Trejo should be personally responsible for Alvarez's unethical conduct.
[19] Trejo does not challenge the finding that his violation of former RPC 5.3(b) caused injury to a client. See Appellant's Am. Opening Br. at 33-34.
[20] The ABA Standards standard 9.22 sets out a list of aggravating factors that may be considered. Aggravating factors include:

(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of victim;
(i) substantial experience in the practice of law;
(j) indifference to making restitution;
(k) illegal conduct including that involving the use of controlled substances.
The ABA Standards standard 9.32 sets out a list of mitigating factors that may be considered. Mitigating factors include:
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
(i) mental disability or chemical dependency including alcoholism or drug abuse when:
(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.
(j) delay in disciplinary proceedings;
(k) imposition of other penalties or sanctions;
(l) remorse;
(m) remoteness of prior offenses.
[21] The letter states that "[a]fter reviewing your case, I have decided to waive any claim to future fees on the pension I obtained for you with the Department." Ex. R-30.
[1] Ben Jonson, a tribute to Innocence in TRYON EDWARDS, THE NEW DICTIONARY OF THOUGHTS: A CYCLOPEDIA OF QUOTATIONS 311 (C.N. Catrevas, Jonathan Edwards & Ralph Emerson Browns eds., Standard Book Co. rev. ed.1964) (1891).
[2] Although Trejo admitted to committing the violations, he did dispute some facts underlying the allegations.
[3] ABA, Standards for Imposing Lawyer Sanctions Definitions at 17 (1991 & Supp.1992) (Standards).
[4] In fact Trejo was the only party to suffer harm here, as his employee was stealing from him.
[5] Standards Definitions at 17.
[6] The income earned on a client's funds in an IOLTA account is the property of the client. Phillips v. Wash. Legal Found., 524 U.S. 156, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998). As such, this court's requirement in RPC 1.15A(i)(1) that these funds be transmitted to the Legal Foundation of Washington is quite simply as much a taking under article I, section 16 of the Washington State Constitution as it is under the Fifth Amendment to the United States Constitution. The taking is wrongful because the judiciary lacks the constitutional power of eminent domain, that being a legislative not judicial power, whether or not just compensation is due. Eggleston v. Pierce County, 148 Wash.2d 760, 770 n. 7, 64 P.3d 618 (2003).
[7] LEGAL FOUNDATION OF WASHINGTON, 2006 ANNUAL REPORT TO THE PUBLIC: IT'S NOT JUSTICE IF IT'S NOT EQUAL (2006) available at http://www.legal foundation.org/sites/legalfoundation/upload/file manager/Inside-LFW/2006-Report-FINAL.pdf (last viewed June 3, 2008).
[8] Standards std. 4.14.
[9] The hearing examiner found Trejo commingled funds 66 times. Finding of Fact 22. Trejo correctly challenges this finding, as the auditor improperly considered retainers paid by a third party, but without approval by the client, to be funds earned by Trejo. This is an improper approach, and because the auditor failed to indicate how each of the 66 violations occurred, we cannot know how many violations actually occurred.
[10] Majority at 1172.
[11] See Standards std. 4.14.
[12] Standards std. 7.0.
[13] I say we cause clients harm because we deprive them of their property right to the interest earned on their money. It is no answer to say that this interest would not exceed the bank fees to set up a separate account since nothing other than our own IOLTA rule prevents non-IOLTA accounts from being aggregated into a single account  which is exactly the case with an aggregated single IOLTA account. See RPC 1.15A(i)(1). This problem would not exist if the beneficial purposes to which the money is put were fully funded by the legislature from its general fund.