[No. 200,674-4.   En Banc.]

Argued September 15, 2009.      Decided February 11, 2010.

*In the Matter of the Disciplinary Proceeding Against* STEPHEN D. CRAMER, *an Attorney at Law*.

Stephen C. Smith (of *Hawley, Troxell, Ennis & Hawley LLP*), for the attorney.
*Joanne S. Abelson*, for the bar association.

¶1 C. JOHNSON, J. — This case involves an attorney who, when faced with revocation of his business license by the Department of Revenue (DOR), notified DOR he was ceasing his business but instead re-formed his practice from a "PLLC" to an "Inc. PS" and continued to operate. The attorney failed to notify DOR of his new status and removed the revocation order posted at his office. The hearing officer and the Washington State Bar Association's (WSBA) Disciplinary Board (Board) concluded that this conduct was dishonest, illegal, deceitful, and a misrepresentation of his intention to circumvent his tax liabilities and recommended we disbar Stephen D. Cramer. We adopt the Board's recommendation.

## FACTS

¶2 Cramer was admitted to the Washington bar in 1979 and began practicing law as a solo practitioner in 1985. DOR issued Cramer a certificate of registration for Stephen

D. Cramer PLLC (PLLC), a limited liability company, in 1995. Cramer was the sole owner of the PLLC.

¶3 Cramer stopped filing his quarterly excise tax statements in 2003 and eventually stopped paying taxes altogether. By 2006, he owed nearly $10,000 in back taxes. In April 2006, DOR Agent Felicia Jones notified Cramer that she had scheduled a prehearing in May, during which she would meet with him to discuss how he could arrange to pay his tax deficiencies and file delinquent tax statements. Cramer did not appear for the prehearing or return Jones's follow-up calls.

¶4 In August 2006, Jones sent Cramer notice of a September 13, 2006, hearing to determine whether to revoke his PLLC's certificate of registration based on his outstanding tax warrants[1] and his failure to demonstrate that he would be able to pay his past and future tax obligations. Cramer did not appear.

¶5 When Cramer failed to appear at the hearing, DOR issued and served a preliminary revocation order (PRO) revoking the certificate of registration for the PLLC based on Cramer's failure to pay taxes for tax years 2003 through 2005. The PRO advised Cramer that he had 21 days to request review. Cramer did not request review. Instead, on September 22, 2006, he sent Jones a letter, stating, "NOTICE IS HEREBY GIVEN that Stephen D. Cramer, PLLC will cease doing business and terminate all further business operations on September 30, 2006. The limited liability company will then be dissolved through the Washington Secretary of State as soon as possible after that date." Ex. 8C.

¶6 Cramer executed a notice of dissolution of the PLLC effective September 30, 2006. Meanwhile, on September 20, 2006 (two days before sending notice to Jones of Cramer's intention to dissolve the PLLC), Cramer obtained a certificate of incorporation for a new professional services corporation, the Law Office of Stephen D. Cramer Inc. PS (PS)

---

[1] DOR served Cramer with three tax warrants totaling $9,963.39.

from the secretary of state. He was the sole owner, shareholder, and officer of the PS. In operating the PS, Cramer kept the same law office space, phone number, office equipment, accounts receivable, and employee as when he operated his PLLC. Cramer transferred his PLLC's assets to his new PS, but not the liabilities. Cramer did not seek a certificate of registration for his PS with DOR and did not provide DOR with notice of its existence.

¶7 The PRO for the PLLC became final on October 6, 2006. The final revocation order provided that it "[b]e posted in a conspicuous place at the main entrance to the taxpayer's place of business and remain posted until the Tax Warrants are paid." The order further advised, "[I]t shall be unlawful for any person to engage in business after revocation of a certificate of registration. Persons violating this provision shall be guilty of a Class C felony." The order was posted on the door to Cramer's law office on October 12, 2006, but was removed by Cramer several weeks later.

¶8 Although registering a new business with DOR is required by law, Cramer operated his PS without registering from October 13, 2006, through January 8, 2007. Agent Jones received information that Cramer might be conducting business without being registered with DOR and notified Stephen Hiatt, a DOR agent charged with locating unregistered business entities. Hiatt discovered Cramer's filing with the secretary of state incorporating his PS. On November 22, 2006, Hiatt sent Cramer a letter asking whether he was conducting business in Washington as a PS and, if so, to provide his registration number or submit a completed master application for a certificate of registration for the PS. Cramer received and date-stamped Hiatt's letter but did not respond. Cramer attached a copy of Hiatt's letter in correspondence with the WSBA on December 1, 2006. But Cramer denied having ever received Hiatt's letter when confronted by Hiatt in January 2007; he claimed that he had not realized he had received Hiatt's letter. Cramer also claimed that he believed the secretary of state would "handle registration" of his PS with DOR, although Cramer had "handled registration" of his PLLC with DOR.

¶9 After meeting with Cramer, Hiatt sent him another letter with another master license application. On January 8, 2007, Cramer submitted his application to DOR for the PS. DOR subsequently determined that the PS was a successor to the PLLC and transferred the tax liabilities from the PLLC to the PS. Cramer did not pay his overdue taxes until DOR began garnishing the bank accounts of his PS in 2008.

## PROCEDURAL HISTORY

¶10 In November 2007, WSBA filed a two-count formal complaint. Count I alleged Cramer violated Rules of Professional Conduct (RPC) 8.4(b) (by violating RCW 82.32-.290(1) and 82.32.290(2)), RPC 8.4(c), and RPC 8.4(i), by illegally removing the posted revocation order, by operating his law business without a valid business license, and by continuing to operate his law business after his business license had been revoked. Count II alleged Cramer violated RPC 8.4(c) by attempting to circumvent state tax law when he changed the name of the business under which he practiced law.

¶11 Cramer's hearing before a WSBA hearing officer was set for January 24, 2008. Cramer retained counsel, Leland Ripley, to represent him in WSBA proceedings. In December 2007, Ripley presented Cramer with confidentiality waivers that would permit DOR agents to testify about Cramer's tax matters at the hearing. Cramer signed and returned the waivers to Ripley on January 8, 2008. On January 23, 2008, Ripley called Cramer twice to remind him about the hearing the next morning. He left a voice message. Cramer did not appear at the hearing and claims he received no notice of it. Ripley advised the hearing officer that he had provided Cramer with adequate notice of the hearing date. The hearing proceeded without Cramer, and Ripley withdrew from representation shortly thereafter.

¶12 Although Cramer retained new counsel, Stephen Smith, he missed the deadline for setting a date to testify

and the date to submit his proposed findings of fact and conclusions of law. The hearing officer entered findings of fact, conclusions of law, and hearing officer's recommendation (FFCLR) recommending that Cramer be disbarred but agreed to reopen proceedings to allow Cramer to testify on August 28, 2008. Neither Cramer nor his counsel appeared. The hearing officer agreed to move the hearing date to September 11, 2008, both Cramer and his counsel appeared, and Cramer was allowed to testify.

¶13 The hearing officer entered an amended FFCLR on October 10, 2008. He found, among other things, (1) Cramer's claim that he had not realized he had received Hiatt's November 22, 2006, letter was not credible; (2) Cramer's claim that he believed the secretary of state would handle registration of his PS with DOR was not credible; and (3) Cramer's intention in converting his law practice from a PLLC to a PS was to circumvent DOR and avoid paying his tax liabilities. The hearing officer concluded WSBA had proved counts I and II as charged. He determined that the presumptive sanction for each count was disbarment. *See* ABA, STANDARDS FOR IMPOSING LAWYER SANCTIONS std. 5.11(b) (1991 & Supp. 1992) (ABA STANDARDS) (disbarment is generally appropriate when "a lawyer engages in any . . . intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice"). The hearing officer found no mitigating factors and four aggravating factors: prior disciplinary offenses, bad faith obstruction of the disciplinary process, substantial experience in the practice of law, and indifference to making restitution.

¶14 By a vote of nine to three, the Board affirmed the hearing officer's recommendation of disbarment. The dissenting members agreed that the presumptive sanction was disbarment but supported a three-year suspension.

## ISSUES

¶ 15 A. Whether Cramer violated RPC 8.4(b) (by violating RCW 82.32.290(1) and 82.32.290(2)), RPC 8.4(c), and RPC 8.4(i) by illegally removing a posted revocation order, by operating his law business without a valid business license, and by continuing to operate his law business after his business license had been revoked (count I).

¶ 16 B. Whether Cramer violated RPC 8.4(c) by attempting to circumvent state tax law and DOR when he changed the name of the business under which he practiced law (count II).

¶ 17 C. Whether disbarment is the appropriate sanction.

## ANALYSIS

¶18 Cramer presents three assignments of error, alleging that (1) he did not violate the RPCs by practicing law as a PS after his PLLC license was revoked, (2) his conduct was not dishonest and he did not intend to circumvent state tax law or DOR, and (3) his actions do not warrant disbarment. He does not challenge any of the underlying factual findings but, rather, asserts that his conduct does not violate RPC 8.4(b) or 8.4(c), and his violation of RPC 8.4(i) does not merit disbarment.

### *Standard of Review*

¶19 This court has plenary authority to determine the nature of lawyer discipline but has delegated specific responsibilities to WSBA. A hearing officer provides an FFCLR to the Board. The Board is free to adopt, modify, or reverse the hearing officer's FFCLR. *In re Disciplinary Proceeding Against Whitney*, 155 Wn.2d 451, 461, 120 P.3d

550 (2005). In our review, we treat unchallenged findings as proved and we review conclusions of law de novo.

## A. Count I

¶20 The Board concluded Cramer violated count I of WSBA's complaint based on RPC 8.4(b), 8.4(c), and 8.4(i), agreeing with the hearing officer's findings that Cramer (1) removed a posted revocation order; (2) operated his PS without a valid business license; and (3) continued to operate his PLLC as a PS after his business license for the PLLC had been revoked.

### RPC 8.4(b)

¶21 A lawyer violates RPC 8.4(b) by committing "a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." The hearing officer found that Cramer committed the violations described above and concluded these actions constituted criminal acts violating both RCW 82.32.290(1)[2] and RCW 82.32.290(2).[3]

¶22 Cramer concedes that he committed these violations but seems to argue that he is not dishonest, untrustworthy, or unfit as a lawyer because by committing these crimes, he could avoid his tax liabilities and continue to practice, and that his "ability to continue practicing law helped rather than harmed his clients." Pet'r's Br. at 14. We reject his argument.

¶23 A clear nexus exists between an attorney's willing-ness to violate the law and those characteristics relevant to law practice. *See In re Disciplinary Proceeding Against Curran*, 115 Wn.2d 747, 768, 801 P.2d 962 (1990) ("conduct reflecting adversely on a lawyer's fitness to practice law can

---

[2] Tearing down or removing any order or notice posted by DOR and engaging in business without a certificate of registration are both gross misdemeanors. RCW 82.32.290(1).

[3] Engaging in business after DOR has revoked its certificate of registration is a class C felony. RCW 82.32.290(2).

only be found when there is some nexus between the lawyer's conduct and those characteristics relevant to law practice"). An attorney's status as an attorney is not an excuse to violate the law, especially when acting on behalf of one's clients. By removing the revocation order posted by DOR and engaging in business without a certificate of registration in order to avoid his tax liabilities, Cramer violated RCW 82.32.290(1) and RPC 8.4(b). By engaging in business after DOR revoked his certificate of registration in order to avoid his tax liabilities, Cramer violated RCW 82.32.290(2) and RPC 8.4(b). We conclude that by violating RPC 8.4(b), Cramer violated count I.

### *RPC 8.4(c)*

¶24 Under RPC 8.4(c), it is misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Although our conclusion that Cramer violated RPC 8.4(b), without more, sufficiently supports count I, because Cramer focuses much of his argument pertaining to count I on RPC 8.4(c), we address that argument here. As stated, Cramer does not challenge the hearing officer's findings that he removed the revocation order, operated his PS without a valid business license, and continued to do so after DOR revoked the PLLC's business license. Rather, Cramer argues that these actions did not violate RPC 8.4(c) because to determine an RPC 8.4(c) violation, " 'the court must decide whether the attorney lied. No ethical duty could be plainer.' " Pet'r's Br. at 13 (quoting *In re Disciplinary Proceeding Against Dynan*, 152 Wn.2d 601, 616, 98 P.3d 444 (2004)). Cramer alleges that he did not violate RPC 8.4(c) because these actions do not constitute an outright lie.[4]

¶25 Cramer misreads both RPC 8.4(c) and *Dynan*. In *Dynan*, we concluded that a lawyer engaged in dishonesty,

---

[4] Although Cramer ignores the hearing officer's unchallenged finding that he lied when he told DOR Agent Hiatt that he had not seen Hiatt's November 22, 2006, letter inquiring whether Cramer was conducting business as a PS, that finding is not the core misconduct in this case. Clerk's Papers at 439 (FFCLR 65).

fraud, deceit, or misrepresentation when he knowingly filed false declarations with the court to support an award of attorney fees after altering his bills and representing to the court they were true and correct copies of his bills. Nothing in *Dynan* can be read to limit RPC 8.4(c) to lying alone. The rule concerns itself with how such conduct constitutes dishonesty, fraud, deceit, or misrepresentation. As noted above, Cramer removed DOR's revocation order, operated his PS without a valid business license, and continued to do so after DOR revoked the PLLC's business license. The strong inference drawn from these actions is that Cramer would have continued business, without a license and without paying business taxes, had he not been caught by a DOR agent. Taken together, these actions are much more than a lie.

¶26 RPC 8.4(c) is intended to protect the public from lawyers who manifest dishonesty, fraud, deceit, or misrepresentation in all their permutations, directly or otherwise. *See In re Disciplinary Proceeding Against Greenlee*, 158 Wn.2d 259, 271, 143 P.3d 807 (2006) (disciplinary rules should be interpreted to achieve their primary purpose— protection of the public). This rule is consistent with and premised on basic principles to which all attorneys are required to adhere. Upon admission to practice, an attorney takes an oath to abide by the laws of the State of Washington and in their professional conduct employ those means consistent with truth and honor. Those values are reflected in the Rules of Professional Conduct. Cramer's argument is that he did not expressly lie; however, as stated above, RPC 8.4(c) requires an attorney to avoid conduct involving dishonesty, deceit, or misrepresentation. We agree with the conclusions of the hearing officer and the Board that Cramer's removal of the posted revocation order, his continuation of business without a certificate of registration, and the continuation of business after the revocation order were acts involving dishonesty, deceit, and misrepresentation. Pursuant to the unchallenged facts in this case, we cannot reach any other conclusion but that Cramer violated RPC 8.4(c).

*RPC 8.4(i)*

¶27 A lawyer commits misconduct by any "act which reflects disregard for the rule of law, whether the same be committed in the course of his or her conduct as a lawyer, or otherwise." RPC 8.4(i). Cramer concedes that by operating his law business without obtaining a certificate of registration, he violated RPC 8.4(i). However, Cramer claims that he violated this rule unintentionally, notwithstanding the hearing officer's finding to the contrary. The hearing officer rejected this claim as not credible. Clerk's Papers (CP) at 441 (FFCLR 78). Based on the unchallenged findings and the discussion above, we also reject Cramer's argument.

¶28 Concluding that Cramer's removal of the posted revocation order, his continuation of business without a certificate of registration, and his continuation of business after the revocation order violated RPC 8.4(b), 8.4(c), and 8.4(i), we conclude that Cramer violated count I.

B. Count II

¶29 While count I pertains to Cramer's removal of the posted revocation order, his continuation of business without a certificate of registration, and his continuation of business after the revocation order, count II pertains to Cramer's intentional circumvention of state tax law and DOR by changing the name of his law practice. The hearing officer and the Board concluded that, by changing the name of his business from Stephen D. Cramer PLLC to the Law Office of Stephen D. Cramer Inc. PS, Cramer intentionally misrepresented that he was continuing to practice law. Therefore, the hearing officer and the Board concluded Cramer had, once again, violated RPC 8.4(c).

¶30 With regard to count II, Cramer contends that he did not "lie" because his letter to DOR[5] merely informed

---

[5] "NOTICE IS HEREBY GIVEN that Stephen D. Cramer, PLLC will cease doing business and terminate all further business operations on September 30,

DOR of his intention to close his *PLLC* law practice, but not his law practice generally. We reject this argument. Cramer's letter certainly misrepresented his intention to continue his practice of law despite claiming he "never misrepresented that he was continuing to practice law." Pet'r's Br. at 15. Finally, the unchallenged findings of fact reflect that when Agent Jones sent Cramer notice of the September 13, 2006, hearing to determine whether to revoke his PLLC's certificate of registration, Cramer intentionally acted to circumvent this action. His testimony reveals this intention:

> I got a notice from DOR and it was pretty obvious they were going to make sure I couldn't continue in business *under any form* -- under the LLC, anyway -- and I thought it through and really the only option I saw would be to dissolve the LLC, form another corporate entity, and transfer the assets and liabilities to the new corporate entity.

Tr. (Sept. 11, 2008) at 114 (emphasis added).

¶31 Cramer's testimony indicates that, prior to the September 13, 2006, hearing, he knew that revocation of his certificate of registration for his PLLC would mean that he would not be permitted to continue his law practice "under any form." However, rather than attempting to solve his underlying tax problems with DOR, he acted to lead DOR to believe that he had stopped working while continuing to work all along. Cramer appears to advocate that an attorney has the right, in theory, to open Stephen Cramer 1 PLLC, avoid business taxes, and close it; then open up Stephen Cramer 2 PLLC, avoid business taxes, and close it; then open up Stephen Cramer 3 PLLC, avoid paying business taxes, and close it; and so on, as long as he acts under the pretext of serving the better interests of his clients. But as the hearing officer and the Board concluded, by changing his business name to avoid his business taxes, Cramer was acting to serve his own interests, not those of his clients. His letter to DOR (recited above) and testimony

2006. The limited liability company will then be dissolved through the Washington Secretary of State as soon as possible after that date." Ex. 8C.

support the conclusions of the hearing officer and the Board.

¶32 Cramer fails to understand the significance of failing to inform DOR that he was simultaneously closing one law business and opening another, as if this were an accidental oversight. The record shows that Cramer acted intentionally. Cramer opened his PLLC in 1995, operated the PLLC for 11 years, became indebted to DOR, and within a span of three days opened his PS, did not assign the PLLC liabilities to the PS, notified DOR that he was closing his PLLC, and made no attempt to reregister with DOR or notify DOR of his intention to remain in business with his PS. He cannot credibly claim he did not need to register and pay taxes or that his actions were unintentional. This effort to circumvent DOR constitutes dishonesty. The hearing officer's uncontested findings in this matter amply support the conclusion that Cramer's overall scheme to avoid DOR oversight and payment of taxes violated RPC 8.4(c).

¶33 Concluding that Cramer violated RPC 8.4(c) by intentionally misrepresenting that he was continuing to practice law, we conclude that Cramer violated count II.

C. Sanctions

¶34 The hearing officer concluded WSBA had proved counts I and II as charged and that the presumptive sanction for each count was disbarment. Finding no mitigating factors and four aggravating factors (prior disciplinary offenses, bad faith obstruction of the disciplinary process, substantial experience in the practice of law, and indifference to making restitution), the hearing officer recommended disbarment. The Board, by a vote of nine to three, adopted the hearing officer's recommendation. The dissenting members agreed that the presumptive sanction was disbarment but would have recommended a three-year suspension.

¶35 Applying the ABA *Standards* in our review of the Board's recommendation, we first determine the presumptive sanction by examining the ethical duty violated,

the lawyer's mental state, and the injury caused. *In re Disciplinary Proceeding Against Marshall*, 160 Wn.2d 317, 342, 157 P.3d 859 (2007). We then determine whether the presumptive sanction should be increased or reduced due to aggravating or mitigating factors. Finally, we review the degree of unanimity among board members and the proportionality of the sanction.

¶36 " 'The purpose of a disciplinary proceeding is not punitive but to inquire into the fitness of the lawyer to continue in that capacity for the protection of the public, the courts, and the legal profession.' " ABA STANDARDS at 3 (quoting *Ballard v. State Bar of Cal.*, 35 Cal. 3d 274, 291, 673 P.2d 226, 197 Cal. Rptr. 556 (1983)). The hearing officer and the Board concluded that the presumptive sanction for Cramer's "intentional and dishonest acts is disbarment for Count I and disbarment for Count II pursuant to ABA *Standards* std. 5.11(b)." CP at 44 (FFCLR 88). ABA *Standards* std. 5.11(b) applies when a lawyer engages in "intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." With multiple ethical violations, the " 'ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations.' " *In re Disciplinary Proceeding Against Petersen*, 120 Wn.2d 833, 854, 846 P.2d 1330 (1993) (quoting ABA STANDARDS at 6).

¶37 Cramer argues ABA *Standards* std. 5.11(b)[6] should not apply in his case for two reasons. First, he asserts that his conduct did not involve dishonesty, fraud, deceit, or misrepresentation. Alternatively, he asserts that, even if he had acted intentionally and dishonestly, his actions did not *seriously* adversely reflect on his fitness to practice law because the statutory violations were not serious. But engaging in subterfuge to evade legal obligations is very serious: Cramer intentionally used his knowl-

---

[6] Cramer argues ABA *Standards* std. 5.11(b), pertaining to suspensions (and not disbarment), should apply to his conduct.

edge of the law for dishonest purposes. Such conduct "seriously adversely" reflects on his fitness to practice and warrants disbarment. We agree with and adopt the Board's conclusion that the presumptive sanction under both counts is disbarment.

*Aggravating Factors*

¶38 Ordinarily, the presumptive sanction should be imposed unless the aggravating or mitigating factors are sufficiently "compelling" to justify a departure therefrom. *In re Disciplinary Proceeding Against Cohen*, 149 Wn.2d 323, 339, 67 P.3d 1086 (2003). The hearing officer found four compelling aggravating factors that would justify disbarment, even if it were not the presumptive sanction, and found no mitigating factors to support a downward departure. With no citation to authority, Cramer argues that the hearing officer misapplied the aggravating factors. We conclude the record fully supports the findings.

¶39 The first aggravating factor, prior disciplinary offenses, is supported by Cramer's history of discipline: a reprimand in 1991 and two censures in 1994. *See* ABA STANDARDS std. 9.22(a). The 1991 reprimand involved violations of RPC 8.4(c). Additionally, due to his precarious financial situation relating to the events of this case, Cramer was reprimanded and suspended for eight months in 2008 for improper efforts to obtain funds from a client.[7] *In re Disciplinary Proceeding Against Cramer*, 165 Wn.2d 323, 328, 333-34, 198 P.3d 485 (2008).

¶40 The second aggravating factor, bad faith obstruction of the disciplinary proceeding, is supported by Cramer's failure to appear at the January 2008 disciplinary hearing. *See* ABA STANDARDS std. 9.22(e). The hearing officer found Cramer's excuse that his prior counsel failed to provide Cramer with notice of the hearing was not credible.

---

[7] Although Cramer's 2008 reprimand and suspension may not constitute "prior" discipline per se, his "concurrent" discipline is relevant for consideration here.

Cramer failed to appear at the January 2008 disciplinary hearing, failed to schedule a makeup date in March 2008, and failed to appear at the August 2008 makeup date to provide his testimony. This pattern of behavior demonstrates more than indifference to the disciplinary process: it demonstrates intentional disregard of it.

¶41 The third aggravating factor, substantial experience in the practice of law, is supported by the fact that Cramer was admitted to practice in Washington 30 years ago and had run his practice as a PLLC for more than a decade before opening his PS. *See* ABA STANDARDS std. 9.22(i). Cramer does not challenge this factor.

¶42 The fourth aggravating factor, indifference to making restitution, is supported by the fact that Cramer failed to take any steps to pay off his tax warrants or enter into a payment plan until after the January 2008 hearing and, as Cramer admitted, only after DOR began garnishment proceedings against him more than a year after DOR revoked his license. *See* ABA STANDARDS std. 9.22(j).

*Mitigating Factors*

¶43 Cramer argues that three mitigating factors should apply, and he bears the burden of proof for each. *In re Disciplinary Proceeding Against Trejo*, 163 Wn.2d 701, 730, 185 P.3d 1160 (2008).

¶44 First, Cramer argues the Board should have applied the mitigating factor of remoteness of prior offenses because his 1991 and 1994 prior discipline is "too remote." *See* ABA STANDARDS std. 9.32(m). He cites no cases to support that proposition, and we rejected a similar argument in Cramer's prior appeal and do so again here. *Cramer*, 165 Wn.2d at 337. We have considered misconduct more remote than Cramer's as an aggravating factor. *See, e.g., In re Disciplinary Proceeding Against Cohen*, 150 Wn.2d 744, 761, 82 P.3d 224 (2004) (prior discipline occurred 10 and 30 years earlier). Cramer fails to meet his burden here.

¶45 Second, relying primarily on his own testimony, Cramer asserts that he had an "absence of a dishonest or selfish motive." ABA Standards std. 9.32(b). This claim runs counter to the hearing officer's findings, is belied by the record, and is negated by our conclusion that his conduct was dishonest.

¶46 Third, Cramer alleges that the mitigating factor of a timely, good faith effort to pay restitution should apply in his case because he made a "timely good faith effort to pay off the tax warrants." Pet'r's Br. at 19 (citing ABA Standards std. 9.3). But Cramer did not begin to pay off these warrants until after the January 2008 hearing at which he failed to appear. And although Cramer denies the allegation, the record shows that his chief purpose for shifting corporate forms was to forestall, if not prevent, the payment of his tax liabilities. Under the ABA *Standards*, restitution made after the commencement of disciplinary proceedings "should not be considered in mitigation" because "[l]awyers who make restitution only after a disciplinary proceeding has been instituted against them . . . cannot be regarded as acting out of a sense of responsibility for their misconduct, but, instead, as attempting to circumvent the operation of the disciplinary system." ABA Standards std. 9.4 cmt. at 51. Moreover, the restitution here was compelled by DOR's garnishment proceedings. Compelled restitution is not a mitigating factor. *In re Disciplinary Proceeding Against Huddleston*, 137 Wn.2d 560, 579, 974 P.2d 325 (1999); ABA Standards std. 9.4(a). Cramer has failed to meet his burden as to this factor as well.[8]

*Proportionality*

¶47 In proportionality review, we compare the case at hand with " 'similarly situated cases in which the same sanction was either approved or disapproved.' " *In re*

---

[8] The board dissenters favored a three-year suspension over disbarment because Cramer ultimately paid his overdue taxes. For the reasons stated above and under the facts of this case, we reject his payment as a mitigating factor.

*Disciplinary Proceeding Against VanDerbeek*, 153 Wn.2d 64, 97, 101 P.3d 88 (2004) (quoting *In re Disciplinary Proceeding Against Miller*, 149 Wn.2d 262, 285, 66 P.3d 1069 (2003)). In determining whether a case is similarly situated, we take into account all of the lawyer's misconduct, including his record of prior disciplinary offenses, and especially any prior, similar misconduct. The attorney facing discipline "bears the burden of bringing cases to the court's attention that demonstrate the disproportionality of the sanction imposed." *Cohen*, 150 Wn.2d at 763.

¶48 Cramer claims disbarment under his circumstances is disproportionate to other cases. We have reviewed his argument and, for the reasons stated above, find it not persuasive.

## CONCLUSION

¶49 We adopt the Board's recommendation and order Cramer be disbarred.

MADSEN, C.J., and ALEXANDER, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.

¶50 SANDERS, J. (dissenting) — Stephen D. Cramer made mistakes, including violations of the law, but the facts belie that he acted intentionally with dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflected upon his fitness to practice law. *See* ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS std. 5.11(b) (1991 & Supp. 1992). Because I would suspend Cramer's law license instead of disbarring him, I dissent.

¶51 The majority casts Cramer in too sinister a light. It makes great hay out of his failure to inform the Department of Revenue (DOR) of his intention to reincorporate as a different legal entity. Majority at 232. In its zeal, however, the majority effectively creates a new duty that does not exist in our disciplinary jurisprudence. In the eyes of the

majority, Cramer sinned by failing to disclose his intention to continue practicing law as a PS (professional services corporation), when he terminated his PLLC (limited liability company). But there is no lie in Cramer's act, not even one of omission. His letter properly informed the government of his intention to terminate the PLLC.[9] The majority improperly infers deceitful motive from Cramer's letter without citing any legal authority to support this new legal duty of comprehensive disclosure. Majority at 233-35. Cramer's letter was accurate and truthful; it was not dishonest.

¶52 In reality Cramer admitted to incorporating under a new legal entity in his testimony before the disciplinary board and in his interactions with DOR agents. He did not try to conceal his actions. When Cramer learned he was in violation of state law by failing to register with DOR, he submitted a master application for his PS on January 8, 2007. These acts do not support the hearing examiner's legal conclusion that "[b]y intentionally attempting to circumvent the Department of Revenue's Final Revocation Order by changing the name of the business under which he practiced law and continuing to practice without a certificate of registration, Respondent acted dishonestly and deceitfully, in violation of RPC 8.4(c)." Clerk's Papers (CP) at 487-88 (*Amended* Findings of Fact, Conclusions of Law and Hearing Officer's Recommendation (AFFCL) at 17-18).[10]

¶53 As a direct result of the PLLC's termination, Cramer removed the final revocation notice notifying the public of his failure to pay taxes. The notice provided that it be posted at the " 'main entrance to the taxpayer's place of business . . . .' " CP at 481 (AFFCL at 11 (quoting Final

---

[9] Cramer's letter to DOR, dated September 22, 2006, reads, "NOTICE IS HEREBY GIVEN that Stephen D. Cramer, PLLC will cease doing business and terminate all further business operations on **September 30, 2006**. The limited liability company will then be dissolved through the Washington Secretary of State as soon as possible after that date." Ex. 8C.

[10] We review conclusions of law de novo. *In re Disciplinary Proceeding Against Guarnero*, 152 Wn.2d 51, 59, 93 P.3d 166 (2004).

Revocation Order)). However, the notice Cramer removed referenced a terminated legal entity. Stephen D. Cramer PLLC did not exist as a place of business. "Cramer removed the posted Order because Stephen D. Cramer [P]LLC had ceased operations and was no longer conducting business at that location." Pet'r's Br. at 12. By removing the notice, Cramer did not believe he was doing anything wrong, and he certainly did not act with dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflected upon his fitness to practice.

¶54 Cramer "does not dispute" he broke the law by operating without a license between October 2006 and January 2007. Pet'r's Br. at 14-15; *see* RCW 82.32.290.[11] Our rules of professional conduct provide that a lawyer commits professional misconduct by committing any "act which reflects disregard for the rule of law," RPC 8.4(i), or by committing "a criminal act that reflects adversely on the lawyer's . . . fitness as a lawyer in other respects." RPC 8.4(b). Cramer breached these rules by operating without a license. For that reason he should suffer a suspension at most.[12] *See In re Disciplinary Proceeding Against Curran,* 115 Wn.2d 747, 771-72, 801 P.2d 962 (1990) (explaining that "the *ABA Standards* do not include a specific *Standard* aimed at conduct reflecting disregard for the rule of law," but finding the presumptive sanction for disregard for the rule of law should be reprimand or censure);[13] *see also In re Disciplinary Proceeding Against Day,* 162 Wn.2d 527, 531, 173 P.3d 915 (2007) (holding that presumptive sanction for

---

[11] "It shall be unlawful . . . [f]or any person to engage in business without having obtained a certificate of registration . . . ," RCW 82.32.290(1)(a)(i), or "[f]or any person to tear down or remove any order or notice posted by the department . . . ," *id.* at (1)(a)(iii), or "[f]or any person to engage in business after revocation of a certificate of registration . . . ," *id.* at (2)(a)(i).

[12] ABA *Standards* std. 5.12 provides: "Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice."

[13] *In re Disciplinary Proceeding Against Curran* addressed RLD 1.1(a), which was recodified in 2002 as RPC 8.4(i). *See In re Disciplinary Proceeding Against Day,* 162 Wn.2d 527, 544 n.11, 173 P.3d 915 (2007).

nondishonest violation of RPC 8.4(b) is suspension). Disbarment is too severe. "We have historically reserved disbarment for grievous acts of ethical misconduct." *In re Disciplinary Proceeding Against Eugster*, 166 Wn.2d 293, 324, 209 P.3d 435 (2009).

¶55 We give greater weight to a hearing board's unanimous recommendation than a split decision. *In re Disciplinary Proceeding Against Trejo*, 163 Wn.2d 701, 734, 185 P.3d 1160 (2008). Here the vote was nine to three, with the three dissenting votes calling for suspension. This lack of unanimity at the very least casts doubt on the majority's excessive sanction.

¶56 Cramer made some mistakes. However, those mistakes do not warrant our harshest sanction. Cramer did not intentionally act with dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflected upon his fitness to practice law. *See* ABA STANDARDS std. 5.11(b). Suspension is the appropriate sanction for Cramer's misdeeds.

¶57 I dissent.