198 P.3d 485 (2008)
In the Matter of the DISCIPLINARY PROCEEDING AGAINST Stephen D. CRAMER, Attorney at Law.
No. 200,537-3.
Supreme Court of Washington, En Banc.
Argued September 11, 2008.
Decided December 11, 2008.
*486 Stephen Christopher Smith, Hawley Troxell Ennis & Hawley LLP, Boise, ID, for Petitioner.
Leslie Ching Allen, M. Craig Bray, Washington State Bar Association, Seattle, WA, for Respondent.
J.M. JOHNSON, J.
¶ 1 Stephen D. Cramer took advance fee payments from his client, Frank Garcia, and placed the payments into his personal business account (Business Account) instead of the appropriate interest on lawyer's trust account (Trust Account). When the Washington State Bar Association (WSBA) asked Mr. Cramer to produce the billing and trust records for Mr. Garcia, Mr. Cramer produced a bank statement for his Trust Account and claimed that Mr. Garcia's payment had been placed in trust.
¶ 2 Mr. Cramer was charged with three different counts of misconduct for placing client funds in his Business Account and making misrepresentations to the WSBA. The hearing officer recommended an eight month suspension and a reprimand. The Disciplinary Board (Board) unanimously adopted the hearing officer's recommendation of an eight month suspension and reprimand. We affirm the Board's ruling and approve the eight month suspension and reprimand.

FACTS
¶ 3 In May 2001, Stephen D. Cramer, an attorney licensed to practice law in the State of Washington, was contacted by Frank Garcia. Mr. Garcia hired Mr. Cramer to defend him against a lawsuit brought by Magnum Enterprises. Mr. Garcia made a $1,000 payment to Mr. Cramer on June 1, 2001. Mr. Cramer maintained a Trust Account for client funds and a general Business Account at a separate bank. Mr. Cramer deposited the $1,000 check from Mr. Garcia into his Business Account.
¶ 4 Mr. Garcia testified that Mr. Cramer never told him that the $1,000 was nonrefundable. Mr. Garcia also testified that he never saw, received, or took home any fee agreement. Mr. Cramer could not remember if he ever gave Mr. Garcia a fee agreement or whether any such agreement was signed or returned to him. It was not found. However, Mr. Cramer testified that his standard practice was to "always do a written fee agreement." 1 Hr'g Tr. (Jan. 29, 2007) at 156. The hearing officer found that Mr. Cramer gave Mr. Garcia a form agreement containing a provision that the initial funds paid were nonrefundable. However, the hearing officer further found that Mr. Garcia never signed or returned the fee agreement to Mr. Cramer and that there was no agreement that the initial $1,000 payment would be nonrefundable.
¶ 5 Mr. Garcia's case was set for trial on April 15, 2002. Within a week before trial was scheduled to commence, Mr. Cramer told Mr. Garcia that he would withdraw as counsel unless he was paid $2,500 by April 12, 2002. Mr. Garcia made a payment of $1,500 on April 9, 2002 and a second payment *487 of $1,000 three days later on April 12, 2002. Both payments were deposited into the Business Account.
¶ 6 The hearing officer found that Mr. Cramer knew on April 12 that Mr. Garcia's case would not go to trial on April 15. Testimony at trial showed that Mr. Cramer did not earn the $2,500 advance fees until November 2002. Though Mr. Cramer had not earned the $2,500, and had knowledge that the trial would not commence on April 15, Mr. Cramer deposited the funds into his Business Account instead of the Trust Account.
¶ 7 During this time Mr. Cramer was experiencing financial difficulties as evidenced by a number of overdrafts in his Business Account. Mr. Cramer also owed back employment taxes and had a payment agreement with the Internal Revenue Service (IRS). The Business Account was overdrawn more than once during the month of April. There would not have been sufficient funds in Mr. Cramer's Business Account to clear the April IRS check if Mr. Garcia's funds had been deposited correctly in the Trust Account. Additionally, the hearing officer found that on April 12, Mr. Cramer "needed time" to pay a settlement of another grievance filed against him. Clerk's Papers (CP) at 97.
¶ 8 Mr. Garcia and his wife Kim filed a complaint with the WSBA against Mr. Cramer in February 2004. The complaint alleged, among other things, that Mr. Cramer misused client funds and never discussed a fee agreement. The WSBA requested that Mr. Cramer provide "billing and trust records (including canceled checks, ledger cards, disbursal statement and monthly billings) for [Mr. Garcia]." Ex. 214.
¶ 9 On January 14, 2004, prior to Mr. Garcia's complaint, Mr. Cramer's office was burglarized. The burglary resulted in the loss of the majority of his financial records. Accordingly, he had a difficult time locating relevant documents to give to the WSBA. However, Mr. Cramer was able to produce a bank statement for his Trust Account that showed a $2,500 deposit on April 16, 2002. Mr. Cramer asserted to the WSBA that the deposit consisted of funds received from Mr. Garcia. The hearing officer found that Mr. Cramer should have known that the deposit in the Trust Account was not Mr. Garcia's funds. Mr. Garcia's funds were paid into Mr. Cramer's Business Account, not his Trust Account. The hearing officer further found that Mr. Cramer knew from his billing statements that Mr. Garcia's funds "were paid" on April 12, 2002, not April 16, 2002. CP at 97.

PROCEDURAL HISTORY
¶ 10 The WSBA filed a formal complaint against Mr. Cramer, charging him with three counts of misconduct. Based upon the relevant findings of fact, the hearing officer made conclusions of law in regard to each count[1]:
¶ 11 Count 1: Mr. Cramer violated RPC 8.4(c). He should have known that the payments by Mr. Garcia were required to be deposited in the Trust Account.
¶ 12 Count 2: Mr. Cramer violated former RPC 1.14(a) (2002). He should have known that the payments by Mr. Garcia were required to be deposited in the Trust Account.
¶ 13 Count 3: Mr. Cramer violated ELC 5.3(e), RPC 8.4(c), RPC 8.4(d), and RPC 8.4(l). His conduct was more than negligent but not knowing when he represented to the WSBA that he had deposited Mr. Garcia's April 9 and April 12 advance fee payments in the Trust Account.
¶ 14 The Board unanimously adopted the hearing officer's findings of fact and conclusions of law, but added to count one that Mr. Cramer acted with "knowledge." CP at 97-98. In order to determine the appropriate sanction, the hearing officer used the following sections of the American Bar Association's Standards for Imposing Lawyer Sanctions (ABA Standards) (1991 & Supp.1992):

Standard 4.12: Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

Standard 7.3: Reprimand is generally appropriate when a lawyer negligently engages *488 in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.
¶ 15 The hearing officer also found four aggravating factors: std. 9.22(a), prior disciplinary offenses; std. 9.22(d), multiple offenses; std. 9.22(g), refusal to acknowledge wrongful nature of conduct; and std. 9.22(i), substantial experience in the practice of law. CP at 98-99. The hearing officer did not find any mitigating factors.
¶ 16 Based on these findings, the hearing officer found an insufficient basis to part from the presumptive standards and recommended an eight month suspension for violation of counts 1 and 2 and reprimand for violation of count 3. CP at 99. The Board unanimously adopted the hearing officer's recommendations.

STANDARD OF REVIEW
¶ 17 The Washington Supreme Court has final authority over lawyer disciplinary matters. In re Disciplinary Proceeding Against Poole, 156 Wash.2d 196, 208, 125 P.3d 954 (2006). Mr. Cramer challenges certain findings of fact and conclusions of law made by the hearing officer. Findings of fact are reviewed for substantial evidence. In re Disciplinary Proceeding Against Guarnero, 152 Wash.2d 51, 58, 93 P.3d 166 (2004). Conclusions of law are reviewed de novo and will not be disturbed if they are supported by the hearing officer's findings of fact. In re Disciplinary Proceeding Against Marshall, 160 Wash.2d 317, 330, 157 P.3d 859 (2007).
¶ 18 This court will usually adopt the Board's recommended sanction unless the sanction is not proportionate or the Board was not unanimous in its decision. In re Disciplinary Proceeding Against Carpenter, 160 Wash.2d 16, 31-32, 155 P.3d 937 (2007). We give deference to the sanction decisions of a unanimous Board. In re Disciplinary Proceeding Against Day, 162 Wash.2d 527, 538, 173 P.3d 915 (2007).

ANALYSIS
¶ 19 Mr. Cramer argues that the contested findings were not supported by a clear preponderance of the evidence. The assignments of error can be summarized as follows:
1) The Board's finding that Mr. Cramer should not have deposited the initial $1,000 payment from Mr. Garcia into his Business Account.
2) The Board's finding that Mr. Cramer knowingly dealt improperly with client property when he placed the April 9 and April 12 payments totaling $2,500 from Mr. Garcia into his Business Account.
3) The Board's finding that Mr. Cramer "more than negligent[ly] but not knowing[ly]" violated ELC 5.3(e), RPC 8.4(d), and RPC 8.4(l) when he misrepresented to the WSBA that he had deposited Mr. Garcia's April 9 and April 12 advance fee payments into the Trust Account. CP at 98.
4) The Board's finding of four aggravating factors and the resulting eight month suspension and reprimand.
¶ 20 Mr. Cramer's arguments all relate to the hearing officer's findings of fact and conclusions of law, particularly in relation to Mr. Cramer's mental state.
¶ 21 This court will "give considerable weight to the hearing officer's findings of fact, especially with regard to the credibility of witnesses" testifying in person. Poole, 156 Wash.2d at 208, 125 P.3d 954. Additionally, we often recognize that the hearing officer is in the best position to determine factual findings regarding a lawyer's state of mind and his decision is given "great weight" on review. In re Disciplinary Proceeding Against Longacre, 155 Wash.2d 723, 744, 122 P.3d 710 (2005).

A. The Initial $1,000 Payment

¶ 22 The hearing officer found that Mr. Cramer gave Mr. Garcia a form fee agreement but Mr. Garcia did not sign or return it. The form fee agreement contained a provision that the initial funds paid were nonrefundable. However, the hearing officer found that there was no "meeting of the *489 minds or agreement by Mr. Garcia that the initial $1,000 payment was nonrefundable." CP at 96. The hearing officer further found that Mr. Cramer "should have known that the $1,000 should have been deposited to his trust account." Id.
¶ 23 Mr. Cramer argues that even though he cannot produce a written fee agreement with Mr. Garcia, nevertheless there was an oral agreement that the initial $1,000 payment was nonrefundable. Mr. Cramer testified that his standard practice was to always do a written fee agreement. However, Mr. Garcia testified that Mr. Cramer never told him that the $1,000 was nonrefundable and that he never saw or received any fee agreement. Instead, Mr. Garcia testified that he believed he was giving Mr. Cramer $1,000 to cover some work that needed to be done immediately, such as filing documents.
¶ 24 The testimonies of Mr. Cramer and Mr. Garcia are in direct conflict. Ordinarily we should not disturb the factual findings made by the hearing officer upon conflicting evidence. In re Disciplinary Proceeding Against Dann, 136 Wash.2d 67, 78-79, 960 P.2d 416 (1998). The burglary of Mr. Cramer's office renders his inability to produce a signed fee agreement inconclusive. It is possible that the burglar took the fee agreement along with the financial documents. However, the hearing officer heard the testimony of both parties and made the conclusion that Mr. Cramer gave Mr. Garcia a fee agreement for him to sign and return but that Mr. Garcia never did so. This is a reasonable explanation as to why Mr. Cramer does not have a signed fee agreement from Mr. Garcia. Based on Mr. Garcia's testimony, the absence of a signed fee agreement, and Mr. Cramer's inability to recollect other details of the initial meeting with Mr. Garcia, the hearing officer's finding that no agreement was reached is supported by substantial evidence.

B. The $1,500 Payment on April 9, 2002 and the $1,000 Payment on April 12, 2002

¶ 25 The hearing officer concluded that Mr. Cramer should have known that the April 9 and April 12 payments totaling $2,500 were to be deposited in the Trust Account. The Board added that Mr. Cramer acted with "knowledge." CP at 97.
¶ 26 The hearing officer found that Mr. Garcia's case was set for trial on April 15, 2002. Within a week before trial, Mr. Cramer told Mr. Garcia that he would withdraw as counsel unless he was paid $2,500 by April 12, 2002, stating that he "had bills to pay too." Id. The hearing officer found that Mr. Cramer knew on April 12 that Mr. Garcia's case would not go to trial on April 15. During April 2002, Mr. Cramer owed back employment taxes and had a payment agreement with the IRS. Mr. Cramer was experiencing financial difficulties as evidenced by a number of overdrafts in his Business Account. The Business Account was overdrawn more than once during the month of April. There would not have been sufficient funds in Mr. Cramer's Business Account to clear the April IRS check if Mr. Garcia's funds had been deposited correctly in the Trust Account. Additionally, the hearing officer found that on April 12, Mr. Cramer "needed time" to pay a settlement of another grievance filed against him. Id.
¶ 27 Mr. Cramer does not contest these facts. He admits that he negligently deposited the $2,500 payments from Mr. Garcia into his Business Account instead of the Trust Account. He denies, however, that he purposefully deposited the $2,500 into the Business Account or that he was even aware of that account having insufficient funds. Mr. Cramer testified that he does not use online banking and does not regularly call the bank to check the account's status. He argues that because he waited until after the weekend to deposit the checks (he received the final check on Friday, April 12 and deposited the $2,500 on Monday, April 15) it shows that he was unaware or unconcerned about the Business Account balance or the outstanding IRS check.
¶ 28 The hearing officer's findings of Mr. Cramer's knowledge underlying his actions are supported by substantial evidence. Mr. Cramer concedes that the funds were unearned and placed in the wrong account. Mr. Cramer's Business Account was overdrawn on more than one occasion, and an IRS check was pending. Mr. Cramer demanded *490 that Mr. Garcia pay him by April 12, stating he "had bills to pay too." Id. There is substantial evidence to support the finding that Mr. Cramer knew or should have known that he was depositing Mr. Garcia's payments into the wrong account.

C. Misrepresentation to the Office of Disciplinary Counsel

¶ 29 The hearing officer concluded that Mr. Cramer was more than negligent but not knowing when he represented to the Office of Disciplinary Counsel that he had deposited Mr. Garcia's April 9 and April 12 advance fee payments into his Trust Account.
¶ 30 The WSBA asked Mr. Cramer to provide billing and trust records (including canceled checks, ledger cards, disbursal statement, and monthly billings) related to Mr. Garcia. Mr. Cramer argues that the misrepresentation was an honest mistake and that he had no responsibility to inquire more than he did before responding. On April 16, 2002, Mr. Cramer made a deposit into his Trust Account from another source for the same amount, $2,500. Mr. Cramer sent a letter to the WSBA with the April 2002 bank statement from the Trust Account showing that deposit. Unequivocally, he wrote "[a]lso attached is a copy of my [Trust Account] statement dated 4/30/02. Mr. Garcia's $2,500.00 payment was deposited on 4/16/2002." Ex. 216.
¶ 31 The deposit in the Trust Account was not from Mr. Garcia. Mr. Garcia's funds had been placed in the Business Account by Mr. Cramer, and Mr. Cramer did not send a copy of his Business Account statement to the WSBA. Additionally, the Trust Account statement did not identify the source of the deposit for $2,500. It was not until several months later that the WSBA discovered Mr. Cramer's misrepresentation when Mr. Garcia's wife forwarded to the WSBA copies of cancelled checks, showing Mr. Cramer's Business Account number.
¶ 32 Mr. Cramer's version of the facts is plausible. The burglary at his office shortly before the WSBA's request for documents explain Mr. Cramer's difficulty in giving accurate information, though he could easily have obtained copies from his own bank. His belief that a deposit of $2,500 in his Trust Account during the time period in question was from Mr. Garcia is possible. However, the hearing officer's finding that Mr. Garcia acted more than negligently but less than knowingly is also compelling. Mr. Cramer knew that Mr. Garcia had filed a bar complaint against him. Mr. Cramer reviewed Mr. Garcia's file prior to producing the bank statements. And even though the Trust Account statement did not provide any collaborating indication that the April 16 deposit was from Mr. Garcia, Mr. Cramer unreservedly wrote to the WSBA that the payment was from Mr. Garcia without making any effort to confirm the accuracy of the statement. Finally, the hearing officer found that Mr. Cramer should have known that the April 16 deposit was not from Mr. Garcia because he knew from his billing statements that Mr. Garcia's funds were paid on April 12, not April 16. The hearing officer, faced with conflicting testimony, found that the WSBA had met its burden of proof. The Board unanimously agreed. The findings are supported by substantial evidence.

D. Aggravating Factors

¶ 33 The hearing officer used the ABA Standards and found four aggravating factors: prior disciplinary offenses, multiple offenses, refusal to acknowledge wrongful nature of conduct, and substantial experience in the practice of law.

E. Prior Disciplinary Offenses and Substantial Experience in the Practice of Law

¶ 34 Mr. Cramer argues that two of the aggravating factors are insignificant and should not cause the court to increase any of its presumptive sanctions. First, Mr. Cramer argues that his past disciplinary actions are remote. Second, Mr. Cramer acknowledges that he has practiced law for many years, but argues that this factor is insignificant.

1. Prior Disciplinary Offenses, Std. 9.22(a)

¶ 35 Mr. Cramer has been disciplined on three prior occasions. In 1991, Mr. Cramer *491 was found to have violated RPC 8.4(c) for conduct related to misrepresentation. In 1994, Mr. Cramer was found to have violated former RPC 1.14(a) (1991) for failing to maintain his client's funds in trust. Also in 1994, in a separate action, Mr. Cramer was censured for failing to ensure that a statutory warranty deed was recorded promptly.
¶ 36 Mr. Cramer argues that the past disciplinary actions are remote and unrelated to the allegations in this matter and should not be considered in determining the appropriate sanction. The only authority he cites for this conclusion is ABA Standards std. 9.32(m), which provides a mitigating factor for "remoteness of prior offenses." The hearing officer did not find this mitigating factor.
¶ 37 Mr. Cramer does not cite any cases in which the court has overturned prior findings of past disciplinary actions because they were remote. Conversely, the WSBA cites multiple cases in which past disciplinary actions were allowed as an aggravating factor despite the fact that they occurred many years previous. See In re Disciplinary Proceeding Against Greenlee, 158 Wash.2d 259, 276 n. 2, 143 P.3d 807 (2006); In re Disciplinary Proceeding Against VanDerbeek, 153 Wash.2d 64, 94, 101 P.3d 88 (2004); In re Disciplinary Proceeding Against Cohen, 150 Wash.2d 744, 761, 82 P.3d 224 (2004). Additionally, because the ABA Standards provide a mitigating factor for "remoteness," there is no need to totally exclude prior disciplinary actions if they occurred in the distant past. The proper procedure would be for the hearing officer to also take into account the mitigating factor of "remoteness." Mr. Cramer did not argue in his brief that the hearing officer should have found this mitigating factor.
¶ 38 The ABA Standards do not give any guidance as to how much time need pass before a violation is considered remote. Even if sufficient time had passed between the 1994 discipline and the conduct at issue, there was still sufficient evidence to support the hearing officer's recommended sanctions.

2. Substantial Experience in the Practice of Law, Std. 9.22(i)

¶ 39 Mr. Cramer also admits that he has practiced law for many years but asserts that this factor is not significant and should not cause the court to increase any of its presumptive sanctions. Again, Mr. Cramer does not cite any authority for his conclusion. ABA Standards std. 9.22(i) permits an aggravating factor for substantial experience in the practice of law. Mr. Cramer has been licensed to practice law in the State of Washington since 1979. The hearing officer's finding of this factor is supported by substantial evidence.

F. Multiple Offenses and Refusal To Acknowledge Wrongful Nature of Conduct

¶ 40 Mr. Cramer also argues that the Board incorrectly included two aggravating factors. First, Mr. Cramer argues that the Board should not have found multiple offenses. Second, Mr. Cramer argues that he has not failed to acknowledge the wrongful nature of his conduct.

1. Multiple Offenses, Std. 9.22(d)

¶ 41 Mr. Cramer's contention that the Board should not have found multiple offenses is contingent upon this court finding that Mr. Cramer was not negligent in placing the initial $1,000 payment in his Business Account and that he did not violate the RPCs or ELCs when he made his misrepresentation to the WSBA. Because both of these findings were supported by substantial evidence, the hearing officer correctly found multiple offenses as an aggravating factor.

2. Refusal to Acknowledge Wrongful Nature of Conduct, Std. 9.22(g)

¶ 42 The hearing officer found that Mr. Cramer acknowledged his fault for some of his actions, but did not do so in regard to the misrepresentation to the WSBA (which Mr. Cramer argues was inadvertent). Based on the record before this court, we do not find this aggravating factor to be supported by substantial evidence and do not affirm the Board's finding as to this aggravator. However, the other three aggravating factors are sufficient to uphold the Board's sanctions.

*492 G. Sanctions

¶ 43 In order to determine the appropriate disciplinary sanctions, the court engages in a two-step process. In re Disciplinary Proceeding Against Cohen, 149 Wash.2d 323, 338, 67 P.3d 1086 (2003). First, using the ABA Standards, the court must determine the presumptive sanction by considering the ethical duty violated, the lawyer's mental state, and the extent of the actual or potential harm caused by the misconduct. Id. Second, any aggravating or mitigating facts that alter the presumptive sanction or affect the nature or length of the discipline to be imposed must be considered. Id. As a reminder, mental state generally establishes the presumptive sanction but does not establish a per se presumptive sanction. In re Disciplinary Proceeding Against Stansfield, 164 Wash.2d 108, 124, 187 P.3d 254 (2008). The sanctioning body must take into account all four elements  ethical duty violated, lawyer's mental state, extent of actual or potential harm, and aggravating or mitigating factors  to determine the appropriate sanction. Id.
¶ 44 The hearing officer applied the presumptive sanctions under the ABA Standards for counts 1 and 2. Under ABA Standards std. 4.12, "[s]uspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." The hearing officer therefore concluded that suspension was the presumptive standard for a violation of RPC 8.4(c) and former RPC 1.14(a) (2002) when Mr. Cramer should have known that the funds paid by Mr. Garcia were to be deposited in the Trust Account. He also considered the aggravating factors and concluded that there was an "insufficient basis to [de]part from the presumptive standard of suspension." CP at 99. The hearing officer recommended an eight month suspension. The Board unanimously affirmed.
¶ 45 The hearing officer also applied the ABA Standards for count 3. Under ABA Standards std. 7.3, "[r]eprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system." The hearing officer concluded that reprimand was the presumptive standard for a violation of ELC 5.3(e), RPC 8.4(c), RPC 8.4(d), and RPC 8.4(l) when Mr. Cramer was reckless or negligent in doing so. CP at 99. The hearing officer recommended that Mr. Cramer be reprimanded, and the Board unanimously affirmed.
¶ 46 Each of the findings of fact made by the hearing officer and affirmed by the Board is supported by substantial evidence with the exception of the aggravating factor of failure to acknowledge the wrongful nature of (all) his conduct. The hearing officer's conclusions of law are supported by the findings of fact.
¶ 47 Mr. Cramer violated RPC 8.4(c) and former RPC 1.14(a) by placing client funds in his Business Account. The Board found that Mr. Cramer did so knowingly. Although Mr. Garcia was ultimately not harmed by Mr. Cramer's conduct, there was the potential for harm since money was held and expended by Mr. Cramer long before it was earned. The same is true of the findings that Mr. Cramer violated ELC 5.3(e), RPC 8.4(c), RPC 8.4(d), and RPC 8.4(l).
¶ 48 Additionally, the hearing officer found no reason to depart from the presumptive sanctions based on the finding of multiple aggravating factors and no mitigating factors. We decline to disturb the Board's unanimous decision and proposed sanction. We therefore impose the sanction of eight months suspension from the practice of law and reprimand.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, FAIRHURST, and STEPHENS, JJ.
NOTES
[1] The conclusions of law are abbreviated here.