[No. 201,001-6.   En Banc.]
Argued September 20, 2012.      Decided December 20, 2012.

*In the Matter of the Disciplinary Proceeding Against*
Young Suk Oh, *an Attorney at Law.*

*Scott E. Collins* (of *Helsell Fetterman LLP*), for the attorney.

*Scott G. Busby*, for the Bar Association.

¶1 C. JOHNSON, J. — The issue in this attorney discipline case focuses on the appropriate sanction for largely unchallenged misconduct. The misconduct involves, in essence, failure to maintain client funds in an Interest on Lawyer Trust Account (IOLTA), lack of client funds record keeping, and financial mismanagement generally. The attorney, Mr. Young Oh, agrees some misconduct occurred but challenges the unanimous disciplinary board recommendation of a one-year suspension. We adopt the disciplinary board's recommendation and suspend Mr. Oh for one year.

FACTS

¶2 Young Oh received an undergraduate degree in accounting from the University of Washington in 1990 and became licensed as a certified public accountant (CPA) shortly thereafter. He began working as a CPA and, in 1993, opened his own accounting practice. He was admitted to the Washington bar on November 22, 1999.

¶3 In 2000, Mr. Oh opened a solo practice. The business consisted of an accounting practice serving over 300 busi-

nesses, escrow services for over 10 business sales a month, and a law practice that, among other services, prepared multiple visa applications per month. At times, he employed a contract attorney and nonlawyer staff.

¶4 Despite starting a law practice separate from his accounting and escrow practices, Mr. Oh did not open an IOLTA account for his law practice. Instead, he used a general checking account (Account 4714) into which he deposited moneys received from clients and on behalf of clients, such as settlements. From Account 4714, Mr. Oh also disbursed moneys due to clients; costs associated with individual client matters, such as filing fees; and fees to himself for the legal work performed.

¶5 Compounding this, Mr. Oh generally failed to reconcile the account balances on a regular schedule and failed to keep records as to which clients' money was being paid out of the account. Additionally, he failed to keep client ledger records in individual files, to track receipts, expenditures, or fees. During the later investigation, the Washington State Bar Association's (WSBA) investigator was unable to determine which client was making which payments or if there was even enough money in Account 4714 to cover outstanding liabilities.

¶6 Mr. Oh's mismanagement of Account 4714 resulted in more than a dozen overdrafts during a two-year period. Evidently, when overdrafts occurred, Mr. Oh would deposit personal funds into the account to cure the overdrafts. And, on at least one occasion, he transferred client money from a separate account used in his escrow practice into Account 4714 to cure an overdraft before ultimately disbursing the money to his escrow client. Because Account 4714 was not an IOLTA account, the WSBA was never notified of the overdrafts, as typically occurs when an IOLTA account is overdrawn.

¶7 Relevant to the dispute before us are two counts found by the hearing examiner and adopted by the board:

Count 2 - By failing to place and/or keep client funds in a client trust account, [Mr. Oh] violated former RPC 1.14(a) [(2002)] and/or former [RPC 1.14(c)].

Count 3 - By failing to maintain adequate and/or complete records to be able to determine ownership of client funds in his possession, [Mr. Oh] violated former RPC 1.14(b)(3).

Clerk's Papers (CP) at 1221.

¶8 In finding that Mr. Oh committed these violations and that suspension was appropriate, the hearing officer made several additional findings of fact, many of which are challenged by Mr. Oh. The hearing officer found that Mr. Oh "knew that he was dealing improperly with client funds" by not using an IOLTA account or maintaining "adequate records of client funds in his possession." CP at 1226. Further, the hearing officer found that Mr. Oh's actions resulted in potential injury to his clients and that because the misconduct covered a period of over two years, it constituted a pattern of misconduct.

PROCEDURAL HISTORY

¶9 Mr. Oh's disciplinary case has a rather protracted procedural history. The WSBA filed its first complaint against Mr. Oh on January 31, 2006, and alleged five counts. The first three counts related to a work-visa application that Mr. Oh submitted to the Immigration and Naturalization Service (INS) on behalf of a client. These allegations are not currently at issue. The remaining two counts are the ones at issue in the current appeal, namely that Mr. Oh did not use an IOLTA account or maintain complete records of client funds in his possession.

¶10 On July 25, 2006, the WSBA filed an amended complaint with two additional counts. These counts related to false notarization and an allegation Mr. Oh improperly instructed his paralegal, Victoria Fisher, to present orders in King County Superior Court. These allegations are also not at issue here.

¶11 On January 29, 2007, the hearing officer found each violation to have occurred and recommended a two-year suspension. Mr. Oh appealed the decision and, in August 2007, the board approved the hearing officer's decision by a vote of six to three. Mr. Oh next appealed to this court. Shortly before oral argument, Ms. Fisher recanted her testimony and we remanded to the hearing officer.

¶12 On remand, Mr. Oh asked the hearing officer to vacate the decision because Ms. Fisher's testimony had tainted the proceeding. The hearing officer vacated the counts based on Ms. Fisher's testimony but not the remaining counts. Mr. Oh appealed, and the board ordered a new hearing.

¶13 On August 2, 2010, the WSBA filed a third and final amended complaint. It contained the counts currently at issue, as well as those tied to the INS documents. The hearing was held in October 2010. On March 28, 2011, the hearing officer issued her decision, finding Mr. Oh had committed all counts. She found two aggravating factors: dishonest or selfish motive and multiple offenses. As mitigating factors, the hearing officer looked to Mr. Oh's lack of a prior disciplinary record and his inexperience in the practice of law, though the latter was given less weight due to his training as a CPA. Having found that Mr. Oh acted with knowledge, she concluded suspension was the presumptive sanction and recommended a one-year suspension.

¶14 On appeal, the board adopted the IOLTA account and inadequate record keeping counts but reversed the INS counts. It also unanimously adopted the one-year suspension. Mr. Oh timely appealed to this court and challenges several findings of fact, including the finding of knowledge that led to a presumptive sanction of suspension. He also argues his sanction is disproportionate to sanctions for other similar misconduct. For the reasons that follow, we uphold the board's decision and suspend Mr. Oh for one year.

■ ■

STANDARD OF REVIEW

■ ■ ¶15 This court has ultimate responsibility for lawyer discipline in Washington. *In re Disciplinary Proceeding Against Marshall*, 167 Wn.2d 51, 66, 217 P.3d 291 (2009) (*Marshall* II). A unanimous decision of the WSBA will be upheld in the absence of a clear reason for departure. *In re Disciplinary Proceeding Against Whitt*, 149 Wn.2d 707, 717, 72 P.3d 173 (2003). Where a hearing officer's findings of fact are unchallenged, they become verities on appeal. Challenged findings of fact are upheld if supported by substantial evidence. *Marshall* II, 167 Wn.2d at 66-67. "Substantial evidence" is evidence sufficient " 'to persuade a fair-minded, rational person of the truth of a declared premise.' " *In re Disciplinary Proceeding Against Marshall*, 160 Wn.2d 317, 330, 157 P.3d 859 (2007) (*Marshall* I) (internal quotation marks omitted) (quoting *In re Disciplinary Proceeding Against Poole*, 156 Wn.2d 196, 209 n.2, 125 P.3d 954 (2006)).

ANALYSIS

¶16 Mr. Oh's disciplinary case is governed by former RPC 1.14 (2002). Count 2 is based on former RPC 1.14(a), which requires that all client funds be deposited into "one or more identifiable interest-bearing trust accounts," and former RPC 1.14(c), which spells out the types of acceptable accounts. Mr. Oh does not contest that he failed to comply with former RPC 1.14(a) and (c). Count 3 is based on a failure to keep "complete records" of all client funds in violation of former RPC 1.14(b)(3). In his appeal, Mr. Oh challenges several findings of fact, the presumptive sanction imposed by the hearing officer, and the proportionality of his sanction.[1] We will address each in turn.

---

[1] Mr. Oh also argues his sanction should be reduced because the meaning of "complete records" in former RPC 1.14(b)(3) was vague. He relies on the fact that the rule did not contain a list of required documents and the WSBA investigator's (Ms. Trina Doty) testimony that former RPC 1.14(b)(3) was subsequently amended

A. *Challenged Findings of Fact*

1. Mr. Oh placed client funds into "his general business checking account"

¶17 Mr. Oh challenges the finding of fact that he placed client funds into "his general business checking account," CP at 1124, on the grounds that because Account 4714 held only client funds, it was not a "general" business account. He also argues that the hearing officer's use of the word "his" implies that the account was for personal or business use, which was not the case. Reply Br. at 2. However, this argument is simply an attempt to create a difference between a general business account, out of which a businessperson might pay rent or utilities, and a de facto trust account holding only client funds. Even if Account 4714 did exclusively contain client funds, the RPCs require a trust account be used. Mr. Oh would still be in violation. Moreover, though it appears true that the account was not a daily operating account, there was substantial evidence that he deposited his own funds into the account. For example, he deposited $713 in earned fees in March 2001, significantly more than the $192 required to cover bank charges. Indeed, in response to the question "Mr. Oh, did you deposit your own money into the [4714] business account?" Mr. Oh responded, "Yes, I did." Verbatim Report of Proceedings (VRP) at 605. The RPCs require client funds to be placed in a completely separate trust account. The fact that the account was not his daily checking account does not change the fact that client funds were deposited into a nontrust account in violation of the RPCs.

¶18 Similarly, the use of the word "his" does not create any meaningful error. The WSBA correctly points out that

to provide more guidance. But Ms. Doty's testimony also stated that attorneys generally understood what was required in order to have complete records. Further, he was sanctioned not because he was missing one specific type of record that Ms. Doty personally believed required but because the records failed to meet the functional requirement of tracking client money.

former RPC 1.14 is not about who owns the account but about the type of account used. Mr. Oh ran his own practice, and at most, the hearing officer's use of the word "his" spoke to the fact that it was Mr. Oh's practice. For these reasons, we uphold finding of fact 29: that Mr. Oh placed client funds into "his general business checking account." CP at 1224.

### 2. Mr. Oh used client funds "for his own purposes"

¶19 Mr. Oh further challenges the finding of fact that he "failed to use a trust account for client funds in order to conceal overdrafts in his account and to use the funds for his own purposes without oversight." CP at 1230. As above, this challenge is based on the fact that most operating expenses were paid out of a different account. However, the WSBA provides examples of client funds being used for personal purposes. In February 2002, Mr. Oh deposited $6,000 of client settlement funds into Account 4714. Soon after, he transferred $6,000 to the savings account associated with the checking account he used for operating expenses. The checking account was in overdraft status. Two days later, he transferred $6,000 from the savings account into the checking account. Mr. Oh fails to explain or address this example in his briefing. Importantly, unchallenged finding of fact 37 establishes that he used funds from his escrow trust account to cure overdrafts before disbursing funds to the client. Because there is substantial evidence Mr. Oh used client funds for his own purposes, this finding of fact stands.

### 3. Mr. Oh's actions caused injury to his client

¶20 Mr. Oh argues the record lacks substantial evidence that his actions caused actual injury to his clients. He bases this argument on the fact that no showing was made that clients actually lost money due to his actions. However, the record reflects that his record keeping was so deficient that the investigator was unable to determine if

his clients were harmed. More importantly, *potential* injury is all that need be established. *See* ABA, STANDARDS FOR IMPOSING LAWYER SANCTIONS std. 4.12 (1991 & Supp. 1992). The record amply supports a finding of potential injury.

¶21 One of the primary reasons trust accounts are required is to shield clients from any potential exposure to a lawyer's creditors. By failing to utilize a trust account, Mr. Oh created the possibility that his clients' funds could be subject to levy by Mr. Oh's creditors. Although, as he argues, this appears to have been a "hypothetical or theoretical" possibility at the time, creditors can arise at any time and the potential existed that a creditor could attach Account 4714, especially considering the repeated overdrafts.[2] Reply Br. at 5. Additionally, because the account was not a trust account, the WSBA would never receive notice of any overdrafts. The notification system is designed as a safeguard to protect clients from lawyers who mismanage their clients' funds. Mr. Oh's failure to use a trust account, at the very least, increased the likelihood of harm to his clients.

### 4. Mr. Oh's record keeping was inadequate

¶22 Mr. Oh argues his record keeping was adequate because the investigator was able to track the flow of client funds and because he maintained multiple records of client funds. Again, these findings of fact are supported by substantial evidence.

¶23 Mr. Oh himself admitted that he did not maintain separate client ledgers. Br. of Appellant at 36. Although the

---

[2] Mr. Oh assigns error to this finding of fact as well. He cites *Trejo* for the proposition that the "potential harm from possible attachment by creditors must have some evidentiary basis in fact." Reply Br. at 5 (citing *In re Disciplinary Proceeding Against Trejo*, 163 Wn.2d 701, 720, 185 P.3d 1160 (2008)). But the cited passage refers to this court's decision not to address the hypothetical question of whether a client must consent to representation before a third-party's payment of a nonrefundable retainer is considered earned, which is an issue not relevant here. Because the potential of creditor attachment is sufficient, the finding of fact stands as well. *See In re Disciplinary Proceeding Against McKean*, 148 Wn.2d 849, 864, 64 P.3d 1226 (2003) (recognizing potential harm from possibility of creditor attachment).

WSBA investigator, Ms. Trina Doty, was able to track the flow of money, she was unable to determine if the account contained enough money to cover the obligations to Mr. Oh's clients. The repeated overdrafts and negative balances suggest that Mr. Oh had the same difficulty. Further, Ms. Doty was unable to tell which client was making which payment based on Mr. Oh's records. For example, a $383 check was written to Mr. Oh from Account 4714. On the memo line, the check states "fees earned," but Mr. Oh's records made it impossible to determine which client paid these fees. VRP at 55. The record reflects that this was not an isolated instance. These facts are sufficient evidence to uphold these findings of fact.

¶24 Moreover, Mr. Oh's argument that keeping backup copies of deficient records somehow compensates for their inadequacy is misplaced. The old bank statements kept by Mr. Oh do not help determine which client was paying for any specific charge. Additionally, the passage cited in reference to the "multiple back-up records that Mr. Oh maintained within client files" is in response to a question about the changes that Mr. Oh had implemented after the violations at issue here occurred. Br. of Appellant at 35-36; *see* VRP at 526-27. Thus, it does little to rebut the evidence that his records were inadequate during the time in question.

5. Mr. Oh "knew that he was dealing improperly with client funds"

¶25 This court "give[s] great weight to a hearing officer's determination of an attorney's state of mind because it is a factual finding." *In re Disciplinary Proceeding Against Trejo*, 163 Wn.2d 701, 722, 185 P.3d 1160 (2008). Here, substantial evidence supports the finding that Mr. Oh "knew that he was dealing improperly with client funds." CP at 1226.

¶26 As correctly noted by the WSBA, determining a person's mental state often relies on circumstantial evi-

dence. In this case, Mr. Oh had over 10 years of accounting experience and had maintained trust accounts for his escrow practice. At the very least, Mr. Oh understood the importance of and difference between these types of accounts. His legal training and annual affirmation that he complied with former RPC 1.14 provide additional evidence that he knew he was improperly dealing with client funds. Substantial evidence supports the hearing officer's finding that Mr. Oh knew he was dealing improperly with client funds.

B. *Challenge to the One Year Suspension*

¶27 The ABA *Standards* governs lawyer sanctions in Washington. The court first determines the presumptive sanction, considering the ethical duties violated, the lawyer's mental state, and the actual or potential injury caused by the misconduct. After determining the presumptive sanction, the court looks to any aggravating or mitigating factors that may justify a departure from the presumptive sanction. Lastly, the court looks to the proportionality of the sanction and the degree of unanimity among the board members in reviewing the recommended sanction. *Marshall I*, 160 Wn.2d at 342.

¶28 Although we are not bound by the board's recommendation, "[w]e should not lightly depart from recommendations shaped by [the board's] experience and perspective." *In re Disciplinary Proceeding Against Noble*, 100 Wn.2d 88, 94, 667 P.2d 608 (1983). "Accordingly, we will adopt the sanction recommended by the Disciplinary Board unless we are able to articulate specific reasons for adopting a different sanction." *Noble*, 100 Wn.2d at 95.

¶29 The hearing officer and a unanimous board found Mr. Oh's state of mind to be knowing. A knowing violation implicates standard 4.12 of the ABA *Standards*, which states, "Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly

with client property and causes injury or potential injury." ABA STANDARDS std. 4.12. Mr. Oh argues that the hearing officer's finding of knowledge was not supported by substantial evidence. As discussed above, we reject this argument.[3]

¶30 He also argues that the "[c]ourt should look to his state of mind relative to the consequences of his misconduct rather than the duty violated" and, because his state of mind was not knowing with regard to the consequences, the presumptive sanction is reprimand. Br. of Appellant at 40; *In re Disciplinary Proceeding Against Eugster*, 166 Wn.2d 293, 318, 209 P.3d 435 (2009). Mr. Oh appears correct that the finding of knowledge is related to the violation rather than the consequences.[4] However, further case law, including the cases relied upon in *Eugster*, clarify that "[w]e do not require proof of state of mind relating to the consequences; it is sufficient if the facts support a conclusion that the lawyer either knew or should have known that adverse consequences would occur." *In re Disciplinary Proceeding Against Stansfield*, 164 Wn.2d 108, 123, 187 P.3d 254 (2008); *see Eugster*, 166 Wn.2d at 318. Here, the facts show that Mr. Oh, a CPA with over 10 years of experience, deposited client funds into a nontrust account and failed to keep adequate records of his clients' money. After multiple overdrafts, he knew or should have known that there was a potential for injury to his clients. Thus, we affirm the board's finding that suspension was the appropriate presumptive sanction.

¶31 We now turn to whether any aggravating or mitigating factors justify a departure from the presumptive sanction. The hearing officer found two aggravating factors:

---

[3] ABA *Standards* std. 4.13 states, "Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client."

[4] In full, the finding of fact states, "Respondent knew that he was dealing improperly with client funds when he failed to place client funds in a trust account and when he failed to keep adequate records of client funds in his possession." CP at 1226 (Finding of Fact 47).

multiple offenses and Mr. Oh's use of client funds for personal purposes without oversight. He does not challenge that there were multiple offenses and, as discussed above, substantial evidence supports the finding that he used client funds for personal purposes. As did the board, we agree with the hearing officer that these aggravating factors are amply supported by the record.

¶32 The hearing officer also found two mitigating factors: inexperience in the practice of law and the absence of a prior disciplinary record.[5] ABA STANDARDS std. 9.32(a), (f). The first factor was given less weight because of Mr. Oh's training and experience as an accountant. Mr. Oh argues that the hearing officer should have found additional mitigating factors, including the absence of a dishonest or selfish motive, timely good faith effort to make restitution or to rectify consequences of misconduct, a cooperative attitude toward the disciplinary proceedings, and remorse. Br. of Appellant at 42; ABA STANDARDS std. 9.32(b), (d), (e), (*l*). He also argues that the protracted nature of these proceedings should be considered as a mitigating factor. None of these arguments is persuasive.

¶33 A finding that Mr. Oh lacked a dishonest or selfish motive would be inconsistent with the finding that he used client funds "for his own purposes without oversight." As discussed above, substantial evidence supports this finding. Similarly, although he phased out the use of Account 4714, he deposited client funds into the account as late as August 2002. This slow response to a problem that could be easily fixed shows neither a *timely* good faith effort to rectify the problem nor remorse on the part of Mr. Oh. Further, the WSBA rightfully points out that cooperation

---

[5] Mr. Oh appears to have received an admonition and a reprimand for misconduct that occurred in 2003, 2005, and 2006. The hearing officer mentioned the misconduct but, because it was not "prior" conduct, did not consider it in making her decision. The WSBA's brief also mentions this misconduct, but Mr. Oh's reply brief appears to misinterpret the brief as arguing that the subsequent misconduct should be considered. The WSBA does not explicitly make this argument, and we do not consider these incidents in our decision.

with an investigation is required. Nothing in the record suggests that Mr. Oh was overly helpful so as to justify a reduced sanction. *See Trejo*, 163 Wn.2d at 732 (cooperation a mitigating factor only "where an attorney goes above and beyond the compliance required").

¶34 Similarly, Mr. Oh's argument that the length of these proceedings should be a mitigating factor is unpersuasive. In "case after case," this court has allowed the length of disciplinary proceedings to be a mitigating factor only when unfair prejudice or unjustified prosecutorial delay caused the lengthy proceedings. *In re Disciplinary Proceeding Against Preszler*, 169 Wn.2d 1, 33, 232 P.3d 1118 (2010). Mr. Oh fails to offer evidence of any concrete prejudice that resulted from the length of the proceeding. Moreover, the primary reasons the case has continued for six years are that Ms. Fisher recanted her testimony and that Mr. Oh filed numerous motions and appeals. The record reflects that the WSBA acted promptly and was not the primary cause of any delay. Accordingly, we affirm the hearing officer's determination that there are two aggravating factors and two mitigating factors and find that no departure from the presumptive sanction is warranted.

¶35 Next, we must consider whether Mr. Oh's sanction is proportionate to sanctions for other similar offenses. He offers three cases in support of his position that his sanction is disproportionate, but none of them provides sufficient basis for reducing Mr. Oh's sanction. *In re Disciplinary Proceeding Against Cramer*, 165 Wn.2d 323, 198 P.3d 485 (2008); *Trejo*, 163 Wn.2d 701; *In re Disciplinary Proceeding Against Blanchard*, 158 Wn.2d 317, 144 P.3d 286 (2006).

¶36 In *Cramer*, the attorney was suspended for eight months and received a reprimand for depositing client funds into a business account and making misrepresenta-

tions to the WSBA.[6] This court affirmed the board's recommendation, which mirrored the hearing officer's recommendation. Unlike here, Cramer did utilize a client trust account but failed to deposit certain client funds into the account. *Cramer*, 165 Wn.2d 323.

¶37 In *Trejo*, the attorney repeatedly deposited earned fees into a trust account to avoid potential creditors and inadequately supervised an employee such that the employee was able to conduct a check-floating scheme. Importantly, the misconduct was discovered only when the WSBA received an overdraft notice on Trejo's trust account, which never would have occurred in Mr. Oh's case because he did not maintain a client trust account. This court, despite striking one aggravating factor and finding one additional mitigating factor, found no reason to deviate from the board's sanction of a three-month suspension and two years of probation. *Trejo*, 163 Wn.2d at 709-711, 729, 733.

¶38 Only in *Blanchard* did we modify the board's sanction. But "Blanchard's violations primarily involved a lack of diligence." *Blanchard*, 158 Wn.2d at 331. Although he deposited client funds into his general business account, he did maintain a client trust account, unlike Mr. Oh. Moreover, unlike here, the board decided to increase the hearing officer's sanction from 30 days to one year but had done so without explaining itself. Thus, this court gave less weight to the board's recommendation. In the end, the six-month suspension found a middle ground between the hearing officer and board's sanction. Four justices would have upheld the board's one-year suspension. Because none of the cases cited by Mr. Oh provide a compelling argument

---

[6] Mr. Oh appears to mischaracterize the facts of *Cramer*. His briefing refers to an "alleged" burglary at Cramer's office where relevant documents were stolen. Br. of Appellant at 47. The hearing officer, board, and this court accepted that the burglary took place. Mr. Oh also repeatedly states that Cramer lied to the WSBA. The count tied to Cramer's misrepresentations found that he acted with more than negligence but less than knowledge in making the relevant statements. Part of the problem was that the relevant documents had been stolen, so he could not easily verify the truth of his representations. *Cramer*, 165 Wn.2d 323. Thus, the briefing makes the misconduct sound perhaps worse than it actually was.

that his punishment was disproportionate to other sanctions in similar situations, we find no basis to modify the sanction recommended by both the hearing officer and board.

¶39 As a final matter, Mr. Oh argues throughout his briefing that his misconduct was simply the result of inexperience and that he exhibited good faith in improving his practice to conform to the RPCs. In doing so, he frequently points out that the hearing officer never found that he intentionally misused funds or engaged in fraud as a reason for reducing or eliminating the sanction. However, had these facts been found, the presumptive punishment would likely have been disbarment. ABA STANDARDS std. 4.11.

¶40 Moreover, the issues here are not violations of complex or seldom-applied rules. Every attorney admitted to practice who receives client funds is charged with knowledge of the rules on how funds are to be preserved and protected. Annually, every attorney certifies compliance with these requirements. Compliance with these rules is mandatory and is a necessary and basic requirement of every attorney's duty to his or her client. Failing to comply with these rules, whether by not having a trust account or complete records of client funds, will result in significant sanctions.

CONCLUSION

¶41 The hearing officer made findings of fact that were supported by substantial evidence and determined the proper presumptive sanction. Moreover, the cases offered by Mr. Oh to support his disproportionate-sanction theory do not establish any compelling reason to deviate from the board's unanimous decision. We therefore adopt the board's recommendation of a one-year suspension.

MADSEN, C.J.; CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, and GONZÁLEZ, JJ.; and DWYER, J. PRO TEM., concur.